**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

GREGORY BALDWIN,

                Plaintiff,

vs.

ESTHERVILLE, IOWA; MATT
REINEKE, Individually and in his
Official Capacity as an Officer of the
Estherville Police Department; and
MATT HELLICKSON, Individually and
in his Official Capacity as an Officer of
the Estherville Police Department,

                Defendants.

No. C 15-3168-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING THE
PARTIES' CROSS-MOTIONS FOR
SUMMARY JUDGMENT**

_____

**TABLE OF CONTENTS**

**I. INTRODUCTION** .................................................................. 2
    **A. Factual Background** ................................................ 2
          1. *The parties* ............................................... 3
          2. *The pertinent City ordinances* ........................... 3
          3. *Baldwin's pre-incident operation of ATVs in the City* .............. 6
          4. *The incidents giving rise to Baldwin's claims* ..................... 7
    **B. Procedural Background** ............................................ 10

**II. LEGAL ANALYSIS** .......................................................... 12
    **A. Standards For Summary Judgment** ............................ 12
    **B. The Iowa Constitutional Claims** ............................... 14
          1. *Arguments of the parties* ................................ 14
          2. *Analysis* ................................................ 14
    **C. The Federal Constitutional Claim** ............................. 15
          1. *Arguments of the parties* ................................ 16
          2. *Analysis* ................................................ 17
               a. *Mere negligence* ................................ 17
              b. *Existence of a constitutional violation* ..................... 19

      *c.*      *Qualified immunity* ............................................... *24*
    **D.**     **The State Law False Arrest Claim** ........................................... *28*
**III.**    **CONCLUSION** ................................................................. *28*

Did the defendant city police officers violate the plaintiff's rights under the United States and Iowa constitutions and commit the common-law tort of false arrest when they arrested the plaintiff for riding his ATV on and in a ditch beside a city street, allegedly in violation of a state statute that the officers believed had been, but was not, incorporated into the city's code of ordinances? The defendants—the city and the police officers— have moved for partial summary judgment on the plaintiff's claims of violation of the Fourth Amendment to the United States Constitution and false arrest. The plaintiff has cross-moved for partial summary judgment on liability on all of his claims, which would leave only damages issues for trial.

## I.  INTRODUCTION
### A.  Factual Background

This statement of the factual background does not necessarily include all of the parties' factual allegations and disputes, nor is it necessarily cast in precisely the terms used by the parties. Rather, it focuses on the key facts to put the parties' disputes in context, stated and rearranged as I deemed appropriate. Unless otherwise indicated, the following facts are undisputed.

## 1. The parties

Plaintiff Greg Baldwin has lived in defendant Estherville, Iowa, (the City) at the same address, for approximately 25 years. Defendant Matt Reineke has been employed by the City as a police officer since 1999. Defendant Matt Hellickson has been employed by the City as a police officer since 2007. This case arises from a citation of Baldwin by Officer Reineke for improper operation of his ATV in the City on November 10, 2013, for which Officer Hellickson arrested Baldwin on November 13, 2013.

## 2. The pertinent City ordinances

This case involves numerous provisions that were, or that were believed to be, part of the City's Code of Ordinances. Specifically, on March 17, 1980, the City passed Ordinance No. 429, which amended its Code of Ordinances, Title II ("Community Protection"), Division 1 ("Law Enforcement"), to add Chapter 7 ("Supplemental Estherville Traffic Code"). Defendants' Appendix at 6-7. Chapter 7 included newly-created Ordinance E-321.1, which provided, as follows:

> **E-321.1 OFFENSES.** All sections of the state statutory law, rules of the road, Chapter 321 of the Code of Iowa the offense of which constitutes a simple misdemeanor, are hereby adopted and incorporated by this reference the same as if set forth in full herein into the Code of Ordinances of the City of Estherville, Iowa, and the violation of such applicable state statutory laws of the road shall be a violation of this chapter if the offense occurs within the territorial city limits of the City of Estherville.

Defendants' Appendix at 8. Newly-adopted Ordinance E-321.2 provided, in pertinent part, as follows:

> **E-321.2 CITING OFFENSES.** Citations issued under this chapter shall bear the prefix letter "E" and the applicable corresponding state statutory section of Chapter 321 of the Code of Iowa.

Defendants' Appendix at 8.

IOWA CODE § 321.234A(1)(f), which the parties agree was incorporated into the City's Code of Ordinances by new Chapter 7, provides as follows:

> All-terrain vehicles shall not be operated on a highway unless one or more of the following conditions apply:
>
> * * *
>
> f.    The all-terrain vehicle is operated on a county roadway in accordance with section 321I.10, subsection 2, or a city street in accordance with section 321I.10, subsection 3.

Defendants' Appendix at 11. The subsections of § 321I.10 cross-referenced in § 321.234A(1)(f) provide as follows:

> 2. A registered all-terrain vehicle or off-road utility vehicle may be operated on the roadways of that portion of county highways designated by the county board of supervisors for such use during a specified period. The county board of supervisors shall evaluate the traffic conditions on all county highways and designate roadways on which all-terrain vehicles or off-road utility vehicles may be operated for the specified period without unduly interfering with or constituting an undue hazard to conventional motor vehicle traffic. In designating such roadways, the board may authorize all-terrain vehicles and off-road utility vehicles to stop at service stations or convenience stores along a designated roadway.
>
> 3. Cities may designate streets under the jurisdiction of cities within their respective corporate limits which may be used for the operation of registered all-terrain vehicles or registered off-road utility vehicles. In designating such streets, the city may authorize all-terrain vehicles and off-road utility vehicles to stop at service stations or convenience stores along a designated street.

IOWA CODE § 321I.10(2)-(3).[1]  The parties now agree that, when the City incorporated IOWA CODE CH. 321 into its Code of Ordinances, IOWA CODE CHS. 321A through 321M, including IOWA CODE CH. 321I, where not incorporated.

Another chapter of the City's Code of Ordinances, Title II, Division 1, is Chapter 9 ("All-Terrain Vehicles or ATV and Off Road Utility Vehicles or UTV"), which deals specifically with the legal operation of ATVs within the city limits.  Among other ordinances not at issue, here, Chapter 9 includes Ordinance 219-2, which provides, as follows:

> **219-2 PLACE OF OPERATION.** ATV/UTVs may be operated upon the streets of the City of Estherville, Iowa, except as prohibited in Subsection 1 of this section, by persons possessing a valid Iowa Driver's License.
>
> 1. <u>Prohibited Streets</u>. ATV/UTVs shall not be operated upon any city street which is a primary road extension through the city, to wit:  Iowa Highway No. 4 and Iowa Highway No. 9.  However, ATV/UTVs may cross such primary road extensions.
>
> 2. <u>Parks and Other Public Lands</u>. ATV/UTVs shall not be operated off-road in city parks, playgrounds, or upon any publicly-owned property.
>
> 3. <u>Private Property</u>. ATV/UTVs may only be operated upon private property with express consent of the owner thereof or while engaged in snow removal, landscaping, or other maintenance activities.
>
> 4. <u>Sidewalk or Parking</u>. No ATV/UTV shall be operated upon sidewalks unless engaged in snow removal or maintenance activities (except along the south sidewalk

---

[1] The first subsection of § 321I.10 provides, as follows:

> 1. A person shall not operate an all-terrain vehicle or off-road utility vehicle upon roadways or highways except as provided in section 321.234A and this section.

> from South First Street to West South First Street) nor
> shall they be operated upon that portion of the street
> located between the curb line and sidewalk or property
> line commonly referred to as the "parking" except for
> purposes of snow removal, maintenance, or
> landscaping activities.

Plaintiff's Appendix at 2-3. Chapter 9 also includes Ordinance 219-3, which provides, as follows:

> **219-3 MANNER OF OPERATION.** No person shall operate
> an ATV/UTV in the City of Estherville except as hereinafter
> provided. . . .

Plaintiff's Appendix at 3-5. This ordinance then states, in 13 numbered subsections, requirements for licensing and safe operation, etc., of ATVs and UTVs.

### 3. *Baldwin's pre-incident operation of ATVs in the City*

Since at least 2000, Greg Baldwin has, on occasion, legally operated his ATVs on the streets of the City. Prior to November 10, 2013, Baldwin had also been cited for what Baldwin described in his deposition as operating his ATV "in the wrong place." Defendants' Appendix at 16. Baldwin included in his appendix one alleged violation of City Ordinance 219-2 on October 19, 2006,[2] and two citations for alleged violations of IOWA CODE § 321I.10, also on October 19, 2006. One of the latter citations was dismissed, but Baldwin paid the fine associated with the other.[3] The defendants did not

---

[2] This citation alleged that, on October 19, 2006, Baldwin "operate[d] [an] ATV on public-owned land" in violation of "Local Ord. 219.2(2)," to which he pleaded guilty. *See* Plaintiff's Appendix at 32-33.

[3] These two citations are the following: (1) a citation alleging that, on October 19, 2006, Baldwin "operate[d] [an] ATV on [a] highway right-of-way" in violation of "#321I.10 2006 IA Code," Plaintiff's Appendix at 28, but it appears that this citation was dismissed, *see id.* at 31; and (2) a citation alleging that, on October 19, 2006, he "operate[d] [an] ATV on [a] railroad right-of-way" in violation of "#321I.14(1h) [*i.e.*, (1)(h)] 2006 IA Code," to which he pleaded guilty, *see id.* at 34-35.

submit to the record copies of any citations of Baldwin prior to November 10, 2013. Baldwin's son, Trent Baldwin, had also been cited by City police for violating City Ordinances 219-2 and 219-3 and provisions of IOWA CODE CH. 321I in 2006 and 2007. Plaintiff's Appendix at 36-45.

In approximately 2006, Baldwin, accompanied by his daughter, Kayleen Baldwin, his son, Trent Baldwin, and Jeff Jurgens, had a meeting at the City Police Station with City police officers, who are not identified in the parties' statements of fact, and Steve Reighard, of the State Department of Natural Resources. Officer Reineke did not attend that meeting, and Officer Hellickson was not employed by the City at that time. Baldwin represents that the meeting was to sort out where ATVs could be legally operated in the City. It is not clear from the parties' allegations or the record whether this meeting preceded or followed Baldwin's various citations for illegally operating his ATV in October 2006. Baldwin alleges that the City officers and Reighard informed the citizens present that they could ride ATVs within the City limits on streets and designated trails with the exception of Highways 4 and 9. The defendants deny this assertion, but cite in support of their denial only the various citations that Baldwin had received in October 2006.

### 4. *The incidents giving rise to Baldwin's claims*

The incidents giving rise to Baldwin's claims began on Sunday, November 10, 2013. At approximately 2:30 p.m. that day, Officers Reineke and Hellickson were on patrol in the City when they received a dispatch to report to the Law Enforcement Center concerning a "4 wheeler complaint." They drove to the Law Enforcement Center. Upon their arrival, they spoke with Tenner and Patti Lilland, who live in the Estherville area. Mr. Lilland showed the officers a video of a 4-wheeler riding in the ditch on the south side of North 4th Street. The officers were able to identify the driver of the ATV as Greg Baldwin. They watched the ATV proceed along North 4th Street and turn into a

ditch, using the north Joe Hoye Park entrance, after which it continued in the ditch until it reached West 14th Avenue North, where it returned to the roadway. Baldwin acknowledges that he was operating his ATV/UTV on that date in the south ditch of North 4th Street and on North 4th Street, and the parties agree that the ditch and street are within the City's limits. Baldwin does not recall using the north Joe Hoye Park entrance to enter the ditch.

Officers Reineke and Hellickson reviewed IOWA CODE CH. 321I, because the City did not reproduce Chapter 321 in printed form, only incorporated it by reference, when that chapter was adopted into the City Code of Ordinances. Officer Reineke then reviewed *The Handbook of Iowa All-Terrain Vehicle and Off-Highway Motorcycle Regulations* (*Handbook*), which the defendants contend is a handbook frequently relied upon by police officers when determining whether off road vehicles are operating in compliance with applicable laws. Baldwin denies, for lack of knowledge, the assertion that police officers rely on the *Handbook*, and denies that it addresses the applicable laws of the City. Based upon their reading of the State Code and the information contained in the video provided by the Lillands, Officers Reineke and Hellickson concluded that there had been a violation of what they believed was City Ordinance E-321I.10 (operating on highways). Before issuing a citation, however, Officer Reineke conferred with his supervisor, Captain (now Chief) Brent Shatto, and (then) Chief Eric Milburn. Captain Shatto and Chief Milburn agreed that they believed that the activity shown on the video amounted to a violation of the local ordinance. The parties now agree, however, that City Ordinance E-321I.10 was not a valid ordinance in effect at the time that Baldwin operated his ATV/UTV on November 10, 2013, because it did not exist at that time, and it still is not part of the City's Code of Ordinances.

Officer Reineke prepared a citation (No. 131818 8) to Greg Baldwin, alleging that "on or about 11/10/2013 at 2:30 PM defendant did unlawfully Operate Motor

Vehicle/Boat RED UTV . . . upon a public highway at NORTH 4TH STREET located in the county and state aforesaid and did then and there commit the following offense: Violation ATV OR OFF ROAD UTIL VEH/OPERATION ON HIGHWAYS AND [sic] . . . Local Ord E-321I.10   ICIS E-S/321I.10." Defendants' Appendix at 17.  The citation issued on November 11, 2013.  Officer Reineke went to the Baldwin residence to serve the citation on November 11, 2013, but no one was home.  Because Reineke was scheduled to be off work in the days that followed, he e-filed the citation with the notation: "Request Warrant."  On November 12, 2013, David D. Forsyth, Magistrate, Third Judicial District of Iowa, entered an Order directing that a warrant issue.  Defendants' Appendix at 18.  On November 13, 2013, Officer Hellickson served the warrant on Baldwin, while he was in the parking lot at his grandchild's school, in front of his wife and a large number of people, arrested him, and took him to jail, where he was booked. Baldwin's wife came to the jail and posted bond, and Baldwin was released. Subsequently, Baldwin entered a written plea of not guilty to the charge, and trial was set for May 15, 2014.

The defendants allege that, in the days that followed, City Attorney Christopher Fuhrman discovered that the City had *not* included IOWA CODE CH. 321I when it incorporated IOWA CODE CH. 321 into the Code of Ordinances.  They also allege that neither Shatto, Reineke, nor Hellickson knew this; rather, all were operating under the mistaken belief that the adoption and incorporation of IOWA CODE CH. 321 by the City Council included IOWA CODE CHS. 321A through 321M.  Baldwin disputes these contentions as inconsistent with the meeting that he had with City police officers in 2006 about operation of ATVs in the City; the express incorporation of "chapter 321," not any other chapter of the Iowa Code, into the Code of Ordinances; and the existence of Chapter 9 of the Code of Ordinances.  Mr. Fuhrman was granted leave to amend the charge to allege a violation of a different ordinance, City Ordinance 219-2(2).  Defendants'

Appendix at 28-29. After Baldwin's counsel filed a Motion For Adjudication Of Law Points And To Dismiss, and the City filed its response, the court found "that the cited act is not in violation of the city code as written and the case is DISMISSED, costs assessed to the City of Estherville." Defendants' Appendix at 30-37.[4]

Baldwin alleges that, because of his arrest, he suffered mental and emotional harm and anguish, anxiety, fear, degradation, disgrace, uncertainty, apprehensiveness, restlessness, dismay, tension, and unease. He contends that his wife confirmed the effect on him in her deposition. The defendants deny that Baldwin has produced any evidence to support these claims of harm.

## B.     Procedural Background

On November 4, 2015, Baldwin filed his Petition, which became docket no. 3 in this action, in the Iowa District Court in and for Emmet County, against the City and Officers Reineke and Hellickson, in their individual and official capacities. He asserts four claims arising from his citation and arrest for the allegedly improper operation of his ATV on November 10, 2013. In Count I, against the City, Baldwin alleges a violation of Article I, section 8, of the Iowa Constitution by subjecting him to an unreasonable seizure. In Count II, against defendants Reineke and Hellickson, in their individual capacities, he alleges a violation of the Fourth Amendment to the United States Constitution, pursuant to 42 U.S.C. § 1983, by subjecting him to an unreasonable seizure. In Count III, against the City, he alleges a violation of Article I, section 1, of

---

[4] Baldwin alleges, and the defendants admit, that Mr. Fuhrman wrote Baldwin's counsel an email about the citation for violation of "E321I.10," prior to dismissal of that citation, in which he said, "I don't know what to think of the charge, but, the officers have been having problems with the Baldwin's [sic] and complaints over ATV's [sic], so here we are." Plaintiff's Appendix at 47.

the Iowa Constitution by violating his right to freedom, liberty, and happiness. Finally, in Count IV, against all defendants, he alleges a common-law claim of "false arrest." He seeks damages, interest, costs of the action, attorney's fees, and such other relief as may be deemed just and equitable.

The defendants removed this case to this court on November 20, 2015, on the basis of federal question jurisdiction, with supplemental jurisdiction over the state-law claims, pursuant to 28 U.S.C. §§ 1331, 1367(a), 1441(a), and 1446. Notice of Removal (docket no. 2). Thereafter, on November 23, 2015, the defendants filed a joint Answer (docket no. 5), denying Baldwin's claims and asserting various affirmative defenses, including immunity from suit. On December 2, 2015, Baldwin filed his Motion For Remand To State Court (Counts I, III, And IV) And Stay (Count II) (docket no. 6). The defendants filed their Resistance (docket no. 7) to that motion on December 9, 2015, and I denied it in a Memorandum Opinion And Order (docket no. 8) filed December 15, 2015. Eventually, a jury trial was set in this matter to begin on April 17, 2017.

On July 19, 2016, the defendants filed the first of the dispositive motions now before me, their Motion For Partial Summary Judgment (docket no. 21). In their Motion, the defendants seek summary judgment on Counts II and IV, Baldwin's federal constitutional claim and his state common-law false arrest claim. They seek summary judgment on these claims on the grounds that there are no genuine issues of material fact as to the merits of the two claims at issue and no genuine issues of material fact that they acted in reckless disregard of Baldwin's rights, so that he is not entitled to punitive damages. They also seek summary judgment on these claims, as a matter of law, because the individual defendants are entitled to qualified immunity on Count II; negligence does not state a claim for relief under § 1983; Baldwin's arrest was based on probable cause; and the actions of the individual defendants were not reckless. Baldwin filed his Resistance (docket no. 26) to the defendants' Motion on August 11, 2016, and the

defendants filed a Reply (docket no. 30) in further support of their Motion on August 25, 2016. On August 11, 2016, Baldwin filed his Motion For Partial Summary Judgment (docket no. 27), seeking summary judgment as to liability on all four of his claims, which would leave only damages issues for trial. The defendants filed their Resistance (docket no. 32) to Baldwin's Motion on August 31, 2016, and Baldwin filed a Reply (docket no. 33) in further support of his Motion on September 6, 2016.

Baldwin requested oral arguments on his Motion. I set oral arguments on both Motions for October 24, 2016, but later rescheduled them for November 8, 2016. After hearing those arguments, this case is fully submitted, and I enter this ruling.

## II. LEGAL ANALYSIS

### A. Standards For Summary Judgment

Before addressing the issues raised in the parties' cross-motions, I will summarize the standards for summary judgment. Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact *and* that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c) (emphasis added); *see Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) ("Summary judgment is appropriate if viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law."); *see generally Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, "[t]he movant 'bears the initial responsibility of informing the district court of the basis for its motion,' and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Celotex*, 477 U.S. at 323). In response, "[t]he nonmovant 'must do more

than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id*. (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)).

When the parties have met their burden, the district judge's task is as follows:

> "On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.'" *Ricci v. DeStefano*, ––– U.S. ––––, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009) quoting *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (internal quotations omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). . . . . "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Ricci*, 129 S. Ct. at 2677, quoting *Matsushita*, 475 U.S. at 587, 106 S. Ct. 1348.

*Torgerson*, 643 F.3d at 1042-43.

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ryan v. Capital Contractors, Inc.*, 679 F.3d 772, 776 (8th Cir. 2012). However, summary judgment is particularly appropriate when only questions of law are involved, rather than factual issues that may or may not be subject to genuine dispute. *See, e.g., Cremona v. R.S. Bacon Veneer Co.*, 433 F.3d 617, 620 (8th Cir. 2006).

With these standards in mind, I will address the cross-motions for summary judgment issue-by-issue, rather than consider the motions in turn.

### B.    *The Iowa Constitutional Claims*

#### 1.    *Arguments of the parties*

Baldwin argues that Iowa courts should, if they have not already done so, recognize a cause of action for alleged violations of the Iowa Constitution, like the ones he asserts in Counts I and III of his Petition.  He also contends that there are no genuine issues of material fact that the defendants arrested and jailed him without probable cause in violation of his rights under Article I, Sections 1 and 8, of the Iowa Constitution.  The defendants contend that, not only was Baldwin's arrest supported by probable cause, the Iowa Court of Appeals recently held that there is no private cause of action for a violation of the Iowa Constitution in *State v. Conklin*, No. 14–0764, 863 N.W.2d 301, 2015 WL 1332003 (Iowa Ct. App. March 25, 2015) (table op.), and the Iowa Supreme Court has not yet decided whether to take further review of that decision.

#### 2.    *Analysis*

In *Peters v. Woodbury County, Iowa*, 979 F. Supp. 2d 901, 971 (N.D. Iowa 2013), I stated that I agreed with Chief Judge Reade's analysis and conclusion in *McCabe v. Macaulay*, 551 F. Supp. 2d 771, 784-85 (N.D. Iowa 2007), that Iowa likely would recognize a private right of action for violation of the Iowa Constitution.  Subsequently, however, in *Wilson v. Lamp*, 142 F. Supp. 3d 763, 802-03 (N.D. Iowa 2015), I reserved ruling on a motion to dismiss a claim for violation of Article I, Section 8, of the Iowa Constitution, because the issue of whether or not such a cause of action is recognized in Iowa was under consideration by the Iowa Supreme Court in *Conklin*.  Likewise, Judge Gritzner of the Southern District of Iowa stayed a motion to dismiss an Iowa constitutional claim in *Davis v. Simmons*, 100 F. Supp. 3d 723, 737-39 (S.D. Iowa 2015), on the basis

that the issue of the viability of such a claim was under consideration by the Iowa Supreme Court in *Conklin*, a resolution of the issue by the Iowa Supreme Court "could fundamentally alter any decision by this Court," and he could reconsider the stay upon action by the Iowa Supreme Court or an unreasonable delay of the proceedings before him.

Because the Iowa Supreme Court is still deciding whether or not to take further review of *Conklin*, which will determine whether Iowa recognizes a private right of action for violation of the Iowa Constitution, I decline Baldwin's invitation to rule on that issue or the further issue of whether or not state actors can raise any immunity defense to such a claim. A ruling by the Iowa Supreme Court could fundamentally alter any decision that I might make on this part of Baldwin's Motion For Partial Summary Judgment. I also note that trial in this matter is not set to begin until April 17, 2017, so that trial will not necessarily be delayed by a stay on this part of Baldwin's Motion. Therefore, disposition of the part of Baldwin's Motion For Partial Summary Judgment seeking summary judgment on Counts I and III of his Petition is stayed pending determination by the Iowa Supreme Court of the question of further review in *Conklin*. Like Judge Gritzner, I will reconsider the stay upon action by the Iowa Supreme Court or an unreasonable delay of these proceedings.

### C. The Federal Constitutional Claim

The defendants and Baldwin have moved for summary judgment on Baldwin's claim pursuant to 42 U.S.C. § 1983, in Count II of his Petition, alleging a violation of the Fourth Amendment to the United States Constitution, either in its entirety or as to liability. I will begin my analysis of the parties' cross-motions on this claim with a summary of their arguments.

### 1.   *Arguments of the parties*

The defendants' primary argument is that negligence simply will not support a claim under § 1983, but all the record shows is that the defendants made a negligent mistake of law about whether or not the City had adopted IOWA CODE CH. 321I when it adopted IOWA CODE CH. 321 as part of the City's Code of Ordinances.  In the alternative, the defendants argue that Officers Reineke and Hellickson are entitled to qualified immunity, because it was not clearly established that, when the City incorporated IOWA CODE CH. 321 into the City's Code of Ordinances, Chapters 321A through 321M were not included, so a reasonable officer would not have known that citing Baldwin for a violation of "Municipal Ordinance E-321I.10" was unlawful.  The defendants point to the steps Reineke and Hellickson took to determine whether or not there had been a violation of what they believed was a City ordinance.  They also argue that Hellickson acted pursuant to a facially valid warrant when he arrested Baldwin, shielding him from liability.  Next, they argue that Baldwin fails to state a claim against the City, because he does not allege or argue that the alleged violation of his federal constitutional rights was the result of an official policy, unofficial custom, or deliberate indifference, which might provide a basis for municipal liability.  Finally, they argue that the officers' mistake of law is not sufficient to warrant an award of punitive damages.

Baldwin argues that the defendants' admission of negligence in failing to know or learn the law that they were entrusted to enforce demonstrates that their mistake of law was unreasonable, where objective reasonableness, not negligence, is the proper standard for determining liability.  He argues that the good faith and subjective understanding of the officers involved are irrelevant.

Baldwin also argues that no seizure could be more unreasonable than an arrest for a violation of an ordinance that does not exist.  Indeed, he points out that the ordinances list in black and white what provisions of the Iowa Code were incorporated, and IOWA

CODE CH. 321I is conspicuous by its absence. He concedes that officers may not be responsible for knowing all of the contours and developing interpretations of the law. Nevertheless, he argues that they should be expected to know, at a bare minimum, the specific City ordinances that they were employed to enforce. He argues, further, that the defendants' conduct is even more unreasonable, in the face of City Ordinance 219-2, which plainly authorizes operation of ATVs and UTVs on the streets of the City, except on Highways 4 and 9. Thus, he argues that any prudent officer would have known that the law of the City allowed ATV/UTV operation on the roads within the City's limits, and there is no dispute that he was operating his ATV within the City's limits at the time of his alleged violation. He also points to the meeting he had with law enforcement officers in 2006 as demonstrating the unreasonableness of a belief that operation of an ATV in the City's limits was illegal. For essentially the same reasons, Baldwin argues that Reineke and Hellickson are not entitled to qualified immunity. He argues that there is simply no dispute that the officers were acting under color of state law, arrested him without probable cause, and jailed him in violation of his Fourth Amendment rights, causing him harm.

Finally, Baldwin argues that there is no dispute that the officers acted with callous indifference to his federal constitutional rights in arresting and jailing him, such that punitive damages are available on this claim. Baldwin does clarify, however, that he is not making any claim for violation of federal law against the City in Count II.

### 2. Analysis

#### a. Mere negligence

The defendants assert that Baldwin's claim of arrest without probable cause fails, because a § 1983 claim cannot be based on mere negligence, which is all that the record shows in this case. As Baldwin points out, none of the cases on which the defendants rely for this argument involves a claim of arrest without probable cause. *See Corwin v.*

*City of Independence, Mo.*, 829 F.3d 695, 698 (8th Cir. 2016) (deliberate indifference to a serious medical need); *Rosas v. City of Lansing*, No. C04-1053, 2006 WL 897288, *4 (N.D. Iowa 2006) (excessive force allegations); *Sansgard v. Bennett*, No. C 99–2010, 2000 WL 34027917, *3 (N.D. Iowa 2000) (claim of an unlawful seizure under the Fourth Amendment based on a coroner's mistaken determination of cause of death); *Schultz v. Amick*, 955 F. Supp. 1087, 1096 (N.D. Iowa 1997) (excessive force case). Indeed, I have found no decision of the United States Supreme Court or any of the Circuit Courts of Appeals holding that "negligence" is insufficient to sustain a claim of arrest without probable cause.[5] It is true that in *Daniels v. Williams*, 474 U.S. 327, 328 (1986), the Supreme Court "conclude[d] that the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." (Emphasis in the original). On the other hand, the Eighth Circuit Court of Appeals very recently observed, "[A] § 1983 plaintiff's claim that he was arrested or prosecuted without probable cause . . . 'must be judged' under the Fourth Amendment, not substantive due process." *Stewart v. Wagner*, 836 F.3d 978, 983 (8th Cir. 2016) (citing *Albright v. Oliver*, 510 U.S. 266, 270–71 & n.4 (1994) (plurality opinion joined by seven Justices on this issue)).

Discussion of "negligence" in the context of a claim of arrest without probable cause is ultimately an unhelpful and unproductive misdirection, however, because the standards for probable cause to support an arrest, satisfying the Fourth Amendment, are

---

[5] Courts have held that a "negligent" investigation is insufficient to support a § 1983 claim. *See, e.g., Montoya v. Taylor*, 44 F.3d 1005, 1995 WL 10525, *3-*4 (5th Cir. 1995) (unpubl. op.) (holding that negligent investigation was insufficient to constitute a violation of the Fourteenth Amendment). Baldwin is correct, however, that his claim is not negligent investigation, but arrest without probable cause.

well-settled. Thus, a determination of whether or not probable cause existed is best made in terms of those standards, not in terms of "negligence."

### b.    Existence of a constitutional violation

Proof of an arrest without probable cause is both the substance of Baldwin's claim and the first issue for the defendants' defense of qualified immunity. This is so, because "[a] plaintiff seeking damages under 42 U.S.C. § 1983 must show first that the defendant's conduct violated a constitutional right and, second, that the right was clearly established." *Bowden v. Meinberg*, 807 F.3d 877, 881 (8th Cir. 2015) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)), *cert. denied*, 136 S. Ct. 1717 (2016). To put it another way, "'[t]o overcome a defendant's claim of qualified immunity, the burden falls on [the plaintiff] to show: "(1) the facts, viewed in the light most favorable to [the plaintiff], demonstrate the deprivation of a constitutional right; and (2) the right was clearly established at the time of the deprivation."'" *Gilmore v. City of Minneapolis*, 837 F.3d 827, 832 (8th Cir. 2016) (quoting *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1155 (8th Cir. 2014), in turn quoting *Baribeau v. City of Minneapolis*, 596 F.3d 465, 474 (8th Cir. 2010)); *Vaughn v. Green County, Ark.*, 438 F.3d 845, 850 (8th Cir. 2006) (to determine whether a government official is entitled to qualified immunity, the court ordinarily engages in a twofold inquiry, asking (1) whether there was a deprivation of a constitutional right, and (2) whether the right was clearly established such that a reasonable official would understand that his conduct was unlawful in the situation that he confronted).

As to the constitutional right at issue, here, "[t]he Fourth Amendment right to be free from unreasonable searches and seizures requires that arrests be based on probable cause." *Williams v. City of Alexander, Ark.*, 772 F.3d 1307, 1310 (8th Cir. 2014).

> "Probable cause exists if 'the totality of facts based on reasonably trustworthy information would justify a prudent

> person in believing the individual arrested had committed …
> an offense.'" *Flynn v.Brown*, 395 F.3d 842, 844 (8th Cir.
> 2005) (quoting *Hannah v. City of Overland*, 795 F.2d 1385,
> 1389 (8th Cir. 1986)).

*Williams*, 772 F.3d at 1310-11; *accord Gilmore*, 837 F.3d at 832. As the Eighth Circuit Court of Appeals has also clarified, "[T]he issue is whether the police officers had probable cause to arrest [the person] for violating [a statute or ordinance], not whether he would have been convicted for violating [that statute or ordinance]." *United States v. Hawkins*, 830 F.3d 742, 746 (8th Cir. 2016).

Baldwin contends that there was a constitutional violation, because there could be no probable cause for his arrest, when the ordinance that he allegedly violated did not exist. The defendants contend that they merely made a "mistake of law." In *Heien v. North Carolina*, ___ U.S. ___, 135 S. Ct. 530 (2014), the Supreme Court recognized that probable cause may exist, despite an arresting officer's "mistake of law." 135 S. Ct. at 536. This is so, the Court concluded, even though "the inquiry is not as forgiving as the one employed in the distinct context of deciding whether an officer is entitled to qualified immunity for a constitutional or statutory violation," and the Court recognized that "[t]he Fourth Amendment tolerates only *reasonable* mistakes." *Id.* at 539. In *Heien*, the officer had believed that a North Carolina statute required a vehicle to have two functioning brake lights, and had stopped the vehicle in question for having only one. The statute had never previously been construed, but a subsequent construction of the statute established that only one functioning brake light was required. *Id.* at 540. The North Carolina Court of Appeals concluded, nevertheless, that the language of the statute was such that it would have been reasonable for the officer to think that the statute did require two functioning brake lights. *Id.* The United States Supreme Court concluded, likewise, that there was reasonable suspicion for the stop, because the Court had "little difficulty concluding that the officer's error of law was reasonable." *Id.*

Here, the officers' mistake of law was that Ordinance "E321I.10" existed, *i.e.*, that it had been incorporated by reference into the City's Code of Ordinances when IOWA CODE CH. 321 was incorporated. This kind of mistake of law is entirely different from the mistake in *Heien*, which arose from an officer's uncertainty about the meaning of statutory language that had not previously been construed by the courts. Instead, the mistake at issue, here, is the result of "a sloppy study of the laws [the officers were] duty-bound to enforce," *see Heien*, 135 S. Ct. at 539-40, as Baldwin contends. The officers, here, had more authoritative resources available to them than each other or other officers or some *Handbook* that purportedly summarized the applicable law *statewide*, but did not purport to interpret the City's Ordinances, to clarify that 321I was a distinct chapter of the Iowa Code from 321. Such resources included access to printed or electronic editions of the IOWA CODE (*e.g.*, from a public website, such as https://www.legis.iowa.gov/law/iowaCode) and recourse to the City Attorney. Unlike the situation in *Heien*, the question of whether or not IOWA CODE CH. 321I had been incorporated into the City's Code of Ordinances did not depend upon obtuse or potentially ambiguous language requiring considerable legal expertise to interpret. *See id.* at 540 (noting that, after construing the statute in question, the state court had concluded that the officer's contrary understanding was based on an arguable reading of the language and was reasonable); *see also United States v. Martin*, 411 F.3d 998, 1001 (8th Cir. 2005) ("We should not expect state highway patrolmen to interpret the traffic laws with the subtlety and expertise of a criminal defense attorney. While an expert defense attorney, and even a federal judge, ultimately might conclude that the plain language of the Code technically requires only that a vehicle have one 'stop light' in working order, we think it is fair to say that the Code is counterintuitive and confusing." (internal quotation marks and citation omitted)). More importantly, an officer can reasonably be expected to know the laws that he or she is authorized to enforce. *Martin*, 411 F.3d at

1001 ("[O]fficers have an obligation to understand the laws that they are entrusted with enforcing, at least to a level that is objectively reasonable."). Thus, the officers' mistake of law does not establish probable cause in this case.

Nevertheless, Baldwin's argument that—the non-existence of Ordinance "E321I.10" means that probable cause was lacking—is incomplete. As the Eighth Circuit Court of Appeals has recognized,

> [E]ven if [the arresting officer] cited a different offense when he arrested [the plaintiff], "probable cause for the arrest still exist[ed] as long as the facts known to the officer would provide probable cause to arrest for the violation of some other law." *United States v. Demilia*, 771 F.3d 1051, 1054 (8th Cir. 2014). "In other words, an 'arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause.'" *Id.* (quoting *Devenpeck v. Alford*, 543 U.S. 146, 153, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004)). "[His] subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Id.* (quotation omitted).

*Greenman v. Jessen*, 787 F.3d 882, 889 (8th Cir. 2015); *Demilia*, 771 F.3d at 1054 ("In *Devenpeck v. Alford*, the Supreme Court examined probable cause in the context of an arrest and held *that even if an officer invokes the wrong offense* at the time of an arrest, probable cause for the arrest still exists as long as the facts known to the officer would provide probable cause to arrest for the violation of some other law." (emphasis added)). Indeed, the Eighth Circuit Court of Appeals "ha[s] upheld the lawfulness of an arrest based on probable cause even where the arresting officers testified that they believed probable cause was lacking." *Bowden*, 807 F.3d at 881 (citing *Warren v. City of Lincoln, Neb.*, 864 F.2d 1436, 1439–41 (8th Cir. 1989)). Thus, the question is whether the facts known to the officers would have provided probable cause to arrest Baldwin for the

violation of some other City Ordinance. *Greenman*, 787 F.3d at 889; *Demilia*, 771 F.3d at 1054.[6]

Baldwin argues that Ordinance 219-2, which was actually part of the City's Code of Ordinances, plainly establishes the *lack* of probable cause for his arrest. I believe that the opposite is true. While Ordinance 219-2 does provide that "ATV/UTVs may be operated upon the streets of the City," it also provides "ATV/UTVs shall not be operated off-road in city parks, playgrounds, or upon any publicly-owned property." Ordinance 219-2 and (2) (quoted in its entirety, *supra*, beginning on page 5). The officers knew from the video that they reviewed that Baldwin had operated his ATV in the ditch of a City street and that ditch was publicly-owned property. *See Williams*, 772 F.3d at 1310 (probable cause is based on the totality of the circumstances known to the arresting officer). Indeed, the amended charge against Baldwin, after the City Attorney discovered that Ordinance E321I.10 did not exist, was an alleged violation of Ordinance 219-2(2) for driving on "publicly-owned property," because the video showed Badwin driving his ATV in the ditch of a City street, which was, at least arguably, publicly-owned property. *See* Defendants' Appendix at 35-37.

The Iowa District Court ultimately dismissed the amended charge against Baldwin, but only after making two key constructions of pertinent Ordinances. First, the Iowa District Court construed the plain meaning of "street" in City Ordinances to include the "ditch." This conclusion was based on the definition of "street" in City Ordinance 110-102(23) as "mean[ing] and includ[ing] any public way, highway, street, avenue, boulevard, parkway, or other public thoroughfare . . . and unless otherwise indicated in the text, shall include the entire width between the property lines." Defendants'

---

[6] Baldwin's arguments for summary judgment on the probable cause issue did not address this question, but, to be fair, neither did the defendants' arguments.

Appendix at 35. The Iowa District Court also construed "publicly-owned property" in Ordinance 219-2(2), to the extent that it conflicted with Ordinance 110-102(23), as not including the "ditch" of a City street. Defendants' Appendix at 35-36. The Iowa District Court's constructions would establish no more than a mistake of law as to the applicability of the *prohibition* in Ordinance 219-2(2) to Baldwin's driving his ATV in the ditch. That mistake was of the same kind as the mistake of law at issue in *Heien*, involving an *arguable* reading of uncertain language in the law. *See Heien*, 135 S. Ct. at 540. The Iowa District Court's after-the-fact constructions do not establish that a prudent person could not have believed, at the time of Baldwin's alleged offense, that he had committed a violation of Ordinance 219-2(2). *Williams*, 772 F.3d at 1310. Again, "the issue is whether the police officers had probable cause to arrest [Baldwin] for violating [Ordinance 219-2(2)], not whether he would have been convicted for violating [that law]." *Hawkins*, 830 F.3d at 746. The officers had probable cause to arrest Baldwin for a violation of Ordinance 219-2(2).

Therefore, the defendants are entitled to summary judgment on Baldwin's § 1983 claim in Count II alleging a violation of the Fourth Amendment, because probable cause was *not* lacking for Baldwin's arrest, and Baldwin's motion for summary judgment in his favor on this claim is denied.

### c.    *Qualified immunity*

In addition, or in the alternative, I will consider the individual defendants' contention that they are entitled to qualified immunity, even assuming that there was no probable cause for Baldwin's arrest. "'Qualified immunity shields government officials from liability and the burdens of litigation in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known.'" *Gilmore v. City of Minneapolis*, 837 F.3d 827, 832 (8th Cir. 2016) (quoting *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1155 (8th Cir. 2014), in turn

citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  To put it another way, "[q]ualified immunity 'gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.'"  *New v. Denver*, 787 F.3d 895, 899 (8th Cir. 2015) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)). "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'"  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Groh v. Ramir*ez, 540 U.S. 551, 567, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004) (Kennedy, J., dissenting)).  The Eighth Circuit Court of Appeals has explained, in the specific context of a claim of arrest without probable cause,

> [Q]ualified immunity applies when "a reasonable officer *could have believed* [the] arrest to be lawful, in light of clearly established law and the information the arresting officer[ ] possessed." [*Hunter,* 502 U.S.] at 227, 112 S.Ct. 534 (emphasis added). "[T]he issue for immunity purposes is not probable cause in fact but arguable probable cause, that is, whether the officer should have known that the arrest violated plaintiff's clearly established right." *Habiger v. City of Fargo*, 80 F.3d 289, 295 (8th Cir.) (quotation omitted), *cert. denied*, 519 U.S. 1011, 117 S.Ct. 518, 136 L.Ed.2d 407 (1996).

*New*, 787 F.3d at 899.  "'Immunity ordinarily should be decided by the court long before trial.'"  *Id.* (quoting *Hunter*, 502 U.S. at 228).

As pointed out, above, the inquiry for qualified immunity is more "forgiving" than the one employed for a determination of actual probable cause.  *Heien*, ___ U.S. at ___, 135 S. Ct. 539.  Nevertheless, I cannot conclude that the officers' error of law as to the applicability of Iowa Code § 321I.10 as a provision of the City's Code of Ordinances was reasonable.  As I concluded, above, the mistake at issue, here, is the result of "a sloppy study of the laws [the officers were] duty-bound to enforce."  *See Heien*, 135 S.

Ct. at 539-40; *Martin*, 411 F.3d at 1001 ("[O]fficers have an obligation to understand the laws that they are entrusted with enforcing, at least to a level that is objectively reasonable."). To put it another way, the officers' failure to know that Ordinance E321I.10 did not exist was a plainly incompetent violation of the law. *New*, 787 F.3d at 899. Thus, the defendants are not entitled to summary judgment on Baldwin's federal constitutional claim pursuant to § 1983 on the basis of qualified immunity for their failure to know that the law they cited did not exist.

The defendants' argument that they have qualified immunity because Baldwin was arrested pursuant to a warrant from a neutral magistrate requires careful consideration. The Eighth Court of Appeals has explained, in the context of qualified immunity,

> "Whe[n] the alleged constitutional violation involves an arrest pursuant to a warrant, 'the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner[.]'" *Saterdalen v. Spencer*, 725 F.3d 838, 841 (8th Cir. 2013) (second alteration in original) (quoting *Messerschmidt v. Millender*, --- U.S. - ---, 132 S.Ct. 1235, 1245, 182 L.Ed.2d 47 (2012)).

*Williams*, 772 F.3d at 1311. Here, Officer Hellickson arrested Baldwin pursuant to a warrant issued by a magistrate of the Third Judicial District of Iowa.

The rub, here, is "[t]hat a warrant has issued . . . is not dispositive because 'it is possible that a magistrate, working under docket pressures, will fail to perform as a magistrate should.'" *Saterdalen v. Spencer*, 725 F.3d 838, 841 (8th Cir. 2013) (quoting *Malley v. Briggs*, 475 U.S. 335, 345–46 (1986)). As the Eighth Circuit Court of Appeals has explained,

> Accordingly, a civil rights suit against an officer who applied for a warrant may be maintained if "on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue[.]" [*Malley*, 475 U.S.] at 341, 106 S.Ct. 1092.

*Saterdalen*, 725 F.3d at 841.

Baldwin argues that it is obvious that no reasonably competent officer would have concluded that a warrant should issue based on an alleged violation of Ordinance "E321I.10," which did not exist. I agree. The magistrate, working under docket pressures, failed to perform as he should have when he missed the fact that the warrant was based on a statute that was not part of the Code of Ordinances. What is critical, here, however, is that the mistake *of the officers* was the result of "a sloppy study of the laws [the officers were] duty-bound to enforce." *See Heien*, 135 S. Ct. at 539-40; *Martin*, 411 F.3d at 1001 ("[O]fficers have an obligation to understand the laws that they are entrusted with enforcing, at least to a level that is objectively reasonable."). Because of that, "'on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue'" *based on an alleged violation of Ordinance "E321I.10."* *Saterdalen*, 725 F.3d at 841 (quoting *Malley*, 475 U.S. at 341).

This is not to say that, "'on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue'" *based on Baldwin's conduct known to the officers*. *Id.* (quoting *Malley*, 475 U.S. at 341). This is so, because it was not clearly established that Baldwin's conduct did not violate a different Ordinance that was, in fact, part of the City's Code of Ordinances, Ordinance 219-2(2). *See Gilmore*, 837 F.3d at 832 (qualified immunity applies, unless "the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known" (internal quotation marks and citation omitted)). Again, the officers knew that Baldwin had operated his ATV in a ditch that was publicly-owned property. While I have grave concerns about the officers' lack of knowledge of the ordinances that they were authorized to enforce, I must conclude, albeit not without hesitation and concern, that they are entitled to qualified immunity, based on their reliance on a warrant,

where it was not clearly established that Baldwin's *conduct* did not violate a City Ordinance.

Therefore, in addition or in the alternative, the defendants are entitled to summary judgment on Baldwin's federal constitutional claim pursuant to § 1983 on the basis of qualified immunity. The part of Baldwin's Motion For Partial Summary Judgment on liability on that claim must be denied.[7]

### D.     The State Law False Arrest Claim

The analysis of the cross-motions for summary judgment on Baldwin's state law claim of false arrest can be comparatively brief. The claim of false arrest under Iowa law "has two elements: '(1) detention or restraint against one's will, and (2) unlawfulness of the detention or restraint.'" *Thomas v. Marion Cty.*, 652 N.W.2d 183, 186 (Iowa 2002) (quoting *Kraft v. City of Bettendorf*, 359 N.W.2d 466, 469 (Iowa 1984)); *Rife v. D.T. Corner, Inc.*, 641 N.W.2d 761, 767 (Iowa 2002). As to the second element, where, as here, the arrest was pursuant to a facially valid warrant on which it was not unreasonable for the officers to rely, the City and the officers are protected from liability. *Id.* Therefore, the defendants, not Baldwin, are entitled to summary judgment on this claim.

### III.     CONCLUSION

Upon the foregoing,

---

[7] In light of Baldwin's clarification that he not is asserting a federal constitutional claim against the City in Count II, the part of the defendants' Motion For Partial Summary Judgment seeking summary judgment for the City on that claim is denied as moot.

1.    The defendants' July 19, 2016, Motion For Partial Summary Judgment (docket no. 21) is **granted** as to Baldwin's claims of a federal constitutional violation in Count II and state law false arrest in Count IV;

2.    Baldwin's August 11, 2016, Motion For Partial Summary Judgment (docket no. 27) is **denied in part and stayed in part:**

    a.    Those parts of Baldwin's Motion seeking summary judgment on his claims of a federal constitutional violation in Count II and state law false arrest in Count IV are **denied**;

    b.    Those parts of Baldwin's Motion seeking summary judgment on his claims of Iowa constitutional violations in Counts I and III are **stayed** pending determination by the Iowa Supreme Court of the question of further review in *Conklin*.  I will reconsider the stay upon action by the Iowa Supreme Court or an unreasonable delay of these proceedings.

**IT IS SO ORDERED**.

**DATED** this 18th day of November, 2016.

MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA