**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

GREGORY BALDWIN,

               Plaintiff,

vs.

ESTHERVILLE, IOWA,

               Defendant.

No. C 15-3168-MWB

**OPINION AND ORDER
REGARDING DEFENDANT'S
MOTION FOR LEAVE TO AMEND
ANSWER, THE PARTIES' CROSS-
MOTIONS FOR SUMMARY
JUDGMENT ON THE PLAINTIFF'S
STATE CONSTITUTIONAL
CLAIMS, AND CERTIFICATION OF
FURTHER QUESTIONS TO THE
IOWA SUPREME COURT**

---

**TABLE OF CONTENTS**

I.    **INTRODUCTION** ........................................................................ 3
    *A.*    *Factual Background* ................................................. 3
    *B.*    *Procedural Background* ........................................... 5

II.    **THE CITY'S MOTION TO AMEND ITS ANSWER** .................. 8
    *A.*    *Arguments Of The Parties* ....................................... 8
    *B.*    *Analysis* ................................................................. 10
        *1.*    *Applicable standards* .................................... 10
        *2.*    *Application of the standards* ......................... 12
        *3.*    *Summary* ...................................................... 19

III.    **THE RENEWED MOTION FOR SUMMARY JUDGMENT** ................. 19
    *A.*    *The Pending Motion* ............................................... 19
    *B.*    *Summary Judgment Standards* ............................... 20
    *C.*    *The Iowa Constitutional Claims* ........................... 22
        *1.*    *Nature of the claim or claims* ....................... 22
        *2.*    *The Iowa constitutional violation* ................. 23
            *a.*    *Arguments of the parties* ....................... 23
            *b.*    *Discussion* ........................................... 24

|  |  | i. | Requirements of the Iowa Constitution.............. 24 |
|  |  | ii. | Application of the Iowa standards.................... 28 |
|  | c. | Summary........................................................... 33 |
| 3. | "All due care" qualified immunity.................................... 33 |
|  | a. | Arguments of the parties ...................................... 33 |
|  | b. | Discussion ........................................................ 34 |
|  |  | i. | Who decides the defense and when?................ 34 |
|  |  | ii. | The "all due care" defense ........................... 36 |
|  |  | iii. | "All due care" of the officers ........................ 41 |
|  | c. | Summary........................................................... 46 |

IV.   CERTIFICATION OF ADDITIONAL QUESTIONS ............................. 47
    A.   Standards For Certification.................................................... 47
    B.   Questions Of First Impression ............................................... 49
         1.   Questions already identified............................................ 49
         2.   Additional questions ...................................................... 50
    C.   Application Of The Certification Standards ................................. 52
    D.   Opportunity To Refine Or Add To The Questions To Be
        Certified ............................................................................ 53

V.   CONCLUSION............................................................................ 54

This case arises from the plaintiff's arrest by city police officers for riding his ATV on and in a ditch beside a city street, allegedly in violation of a state statute that the officers believed had been, but was not, incorporated into the city's code of ordinances. Although I granted summary judgment for the city and the individual police officers on the plaintiff's claim of violation of the Fourth Amendment to the United States Constitution and his claim of false arrest, I reserved ruling on the plaintiff's claims against the city for violations of the Iowa Constitution. I certified to the Iowa Supreme Court the question of whether a defendant can raise a defense of qualified immunity to an individual's claim for damages for violation of article I, §§ 1 and 8 of the Iowa

Constitution. The Iowa Supreme Court has now answered that question in the affirmative and adopted the available qualified immunity defense, in a thoughtful majority opinion over an equally thoughtful defense. The city seeks leave to amend its answer to assert the qualified immunity defense newly-minted by the Iowa Supreme Court. I must decide whether to allow the proposed amendment and whether to rule on all the questions raised in the parties' reanimated cross-motions for summary judgment and supplemental briefing on the Iowa constitutional claims, in light of the Iowa Supreme Court's answer to the certified question, or, once again, to certify some of those questions to the Iowa Supreme Court.

## I. INTRODUCTION
### A. Factual Background

The factual background to this case is set out in considerable detail in my prior ruling on cross-motions for summary judgment, *see Baldwin v. Estherville, Iowa*, 218 F. Supp. 3d 987, 989-93 (N.D. Iowa 2016), then by the Iowa Supreme Court in *Baldwin v. City of Estherville*, 915 N.W.2d 259, 261-65 (Iowa 2018). For present purposes, suffice it to say that, on November 10, 2013, Officers Reineke and Hellickson, of the Estherville City Police, were shown a video by a resident in the Estherville area of a person the officers identified as plaintiff Gregory Baldwin riding a 4-wheeler ATV that proceeded along North 4th Street and turned into a ditch, using the north Joe Hoye Park entrance, after which it continued in the ditch until it reached West 14th Avenue North, where it returned to the roadway.

The officers then reviewed IOWA CODE CH. 321I, which, *inter alia*, permitted operation of ATVs only on streets designated by cities, *see* IOWA CODE § 321I.10(3), because the officers believed that Chapter 321I had been incorporated by reference into the City's Code of Ordinances when Chapter 321 was incorporated. They also consulted *The Handbook of Iowa All–Terrain Vehicle and Off–Highway Motorcycle Regulations*

(*Handbook*), which the defendants contended is a handbook frequently relied upon by police officers when determining whether off-road vehicles are operating in compliance with applicable laws. Finally, they discussed the matter with the City's police chief and a police captain. They concluded that the activity shown in the video amounted to a violation of City Ordinance E-321I.10. However, that Ordinance was not valid or in effect at the time, because it did not exist.

Officer Reineke prepared a citation and attempted to serve it on Baldwin at his home, but he was not there. Officer Reineke then refiled the citation with the notation "Request Warrant." On November 12, 2013, a state magistrate entered an order directing that a warrant issue. On November 13, 2013, Officer Hellickson served the warrant on Baldwin and took him to jail. Baldwin's wife posted bond, and Baldwin later pleaded not guilty to the charge.

In the days that followed, the City Attorney discovered that the City had not included IOWA CODE CH. 321I when it incorporated IOWA CODE CH. 321 into the City's Code of Ordinances. The City Attorney was granted leave to amend the charge to allege a violation of a different ordinance, City Ordinance 219–2(2). City Ordinance 219–2 generally permits ATVs to be operated on City streets except where prohibited, but subsection (2) prohibits operation of ATVs "in city parks, playgrounds, or upon any publicly-owned property." On Baldwin's Motion For Adjudication Of Law Points And To Dismiss, the Iowa District Court found that the cited act was not a violation of the City's Code of Ordinances as written and dismissed the case. The state court did so only after making two key constructions of pertinent City Ordinances: (1) that the plain meaning of "street" in City Ordinances included the "ditch," and (2) that "publicly-owned property" in City Ordinance 219–2(2), to the extent that it conflicted with another ordinance defining "street," did not include the "ditch" of a City street. *See Baldwin*, 218 N.W.2d at 1000-1001.

### B.     Procedural Background

Again, some of the procedural background is set out in more detail in my ruling on cross-motions for summary judgment.  *See Baldwin*, 218 F. Supp. 2d at 993-95. Suffice it to say that, on November 4, 2015, Baldwin filed his Petition, which became docket no. 3 in this action, in the Iowa District Court in and for Emmet County, against the City and Officers Reineke and Hellickson, in their individual and official capacities. He asserted four claims arising from his citation and arrest for the allegedly improper operation of his ATV on November 10, 2013.  In Count I, against the City, Baldwin alleged a violation of article I, § 8 of the Iowa Constitution by subjecting him to an unreasonable seizure.  In Count II, against defendants Reineke and Hellickson, in their individual capacities, he alleged a violation of the Fourth Amendment to the United States Constitution, pursuant to 42 U.S.C. § 1983, by subjecting him to an unreasonable seizure.  In Count III, against the City, he alleged a violation of article I, § 1 of the Iowa Constitution by violating his right to freedom, liberty, and happiness.  Finally, in Count IV, against all defendants, he alleged a common-law claim of "false arrest."  He sought— and still seeks—damages, interest, costs of the action, attorney's fees, and such other relief as may be deemed just and equitable.

The defendants removed this case to this court on November 20, 2015, based on federal question jurisdiction, with supplemental jurisdiction over the state-law claims, pursuant to 28 U.S.C. §§ 1331, 1367(a), 1441(a), and 1446.  Thereafter, on November 23, 2015, the defendants filed a joint Answer, denying Baldwin's claims and asserting various affirmative defenses, including immunity from suit.

On November 18, 2016, on the parties' cross-motions for summary judgment, I granted the defendants' motion as to Baldwin's claims of a federal constitutional violation in Count II and state law false arrest in Count IV, denied Baldwin's motion for summary judgment on those claims, and stayed those parts of Baldwin's motion seeking summary judgment on his claims of Iowa constitutional violations in Counts I and III pending a

decision by the Iowa Supreme Court on whether it would review the decision in *Conklin v. State*, No. 14–0764, 863 N.W.2d 301, 2015 WL 1332003 (Iowa Ct. App. March 25, 2015) (table op.), which held that there is no private cause of action for a violation of the Iowa Constitution.[1]  On February 17, 2017, at the request of the parties, I continued the trial in this matter indefinitely until the Iowa Supreme Court issued a ruling in either *Conklin* or *State v. Godfrey*, No. 15-0695, which also raised the question of whether the equal protection and due process provisions of the Iowa Constitution provide a direct action for damages.

On June 30, 2017, the Iowa Supreme Court issued its opinion in *State v. Godfrey*, 898 N.W.2d 844 (Iowa 2017), holding that the equal protection and due process clauses of the Iowa Constitution, article I, §§ 6 and 9, are self-executing, such that a tort claim for monetary damages exists for violations of each, when the legislature has not provided an adequate remedy.  The Iowa Supreme Court left open the question of whether defendants could assert qualified immunity as a defense to such claims.  On June 30, 2017, the Iowa Supreme Court issued Procedendo and an order denying further review in *Conklin*.  In light of *Godfrey*, the defendants filed a Second Motion For Summary Judgment on August 11, 2017, in which they assumed that the ruling in *Godfrey* extends to other claims under the Iowa Constitution, and they sought summary judgment in their favor on what they contended was the remaining legal question of whether they are entitled to qualified immunity in connection with Baldwin's remaining Iowa constitutional claims.

On October 2, 2017, in response to the defendants' Second Motion For Summary Judgment, I entered an Order Certifying Question To The Iowa Supreme Court staying

---

[1] At this point in the litigation, the City was the only remaining defendant, because the individual police officers were not named as defendants in Baldwin's remaining Iowa constitutional claims.

all proceedings in this court, as to *all* issues, in their entirety, pending the Iowa Supreme Court's answer to the following question:

> Can a defendant raise a defense of qualified immunity to an individual's claim for damages for violation of article I, § 1 and § 8 of the Iowa Constitution?

The parties did not thereafter request the certification of any additional questions to the Iowa Supreme Court. On June 29, 2018, the Iowa Supreme Court answered the certified question, as follows:

> A defendant who pleads and proves as an affirmative defense that he or she exercised all due care to conform with the requirements of the law is entitled to qualified immunity on an individual's claim for damages for violation of article I, sections 1 and 8 of the Iowa Constitution.

*Baldwin*, 915 N.W.2d at 260-61.

On July 10, 2018, Baldwin filed a Status Report stating that the Iowa Supreme Court had answered the certified question. He requested that I lift the stay in this proceeding and order supplemental briefing on the unresolved portions of the motions for summary judgment concerning the application of Iowa's new qualified immunity defense to the facts of this case. On July 12, 2018, the City filed its Motion For Leave To Amend Answer in order to assert Iowa's new qualified immunity defense, which Baldwin resisted on July 13, 2018. On July 13, 2018, the City also filed a Status Report agreeing that supplemental briefing was appropriate on the remaining portions of the motions for summary judgment. The City also reported that it believed that the parties had completed discovery and that, subject to a ruling on the various pending motions, this case was now ready to be set for trial. The Iowa Supreme Court's opinion answering the certified question was filed in this court on July 23, 2018. On August 5, 2018, Baldwin filed a supplemental brief in support of his Motion For Summary Judgment, as to his Iowa constitutional claims and in resistance to the City's Second Motion For Summary Judgment. In that supplemental brief, Baldwin also seeks summary judgment that the

defendants acted in reckless disregard for his rights under article I of the Iowa Constitution, as a gateway to a jury award of punitive damages, and a determination that he is entitled to attorney's fees. On August 6, 2018, the City filed a brief in support of its Motion For Leave To Amend Answer and in resistance to Baldwin's Motion For Summary Judgment on his Iowa constitutional claims, a determination of reckless disregard, and Baldwin's entitlement to attorney's fees.

On August 29, 2018, I entered an Order lifting the stay on proceedings in this case and indicating that a trial date would be set by separate order, after consultation with the parties. On August 30, 2018, I entered a Trial Management Order setting a jury trial for January 7, 2019.

I now turn to consideration of the various matters raised by the parties in light of the Iowa Supreme Court's answer to the certified question.

## II.     THE CITY'S MOTION TO AMEND ITS ANSWER

The City seeks leave to amend its Answer to add the new affirmative defense of "all due care" adopted by the Iowa Supreme Court in answer to this court's certified question. Although the defendants had asserted as one of several affirmative defenses in their original Answer that "Defendants are immune from suit," the City seeks leave to add the following affirmative defense in an Amended Answer: "Defendant's employees exercised all due care to conform with the requirements of the law and are therefore entitled to qualified immunity." Baldwin contends that leave to amend should be denied.

### A.     Arguments Of The Parties

The City acknowledges that good cause for an untimely amendment under Rule 16(b) of the Federal Rules of Civil Procedure requires a showing that, despite diligence, the movant could not reasonably have offered the amendment sooner. The City contends that it can meet this requirement, because the "all due care" standard for qualified

immunity adopted by the Iowa Supreme Court could not reasonably have been foreseen. This is so, the City argues, because Baldwin argued for adoption of a strict liability standard, while it argued for adoption of the federal qualified immunity analysis, but the Iowa Supreme Court declined to do either and, instead, fashioned a new affirmative defense based on proof that the defendants exercised "all due care." The City argues that, while its proffered amendment is admittedly after the deadline for amendments, there is good cause for the timing of the proffered amendment under these circumstances.

In his resistance, Baldwin argues that the deadline for motions to amend pleadings under the court's original Scheduling Order expired more than ten months ago and, indeed, was marked "COMPLETED" in the court's subsequent Scheduling Order entered on August 2, 2017. He also points out that discovery is completed. He argues that allowing the City to amend its Answer to add an "all due care" qualified immunity defense, which asserts a position contrary to the City's previous admission of negligence, would cause undue prejudice to him within the meaning of Rule 16. More specifically, he asserts that he intends to use the City's original negligence defense against them, so it would unduly prejudice him to allow the City to pursue an inconsistent defense. Baldwin also argues that allowing the amendment would be prejudicial, because it would force him to go to trial without the opportunity to discover just what the City's officers contend was their exercise of "all due care." Next, he contends that the amendment should be rejected, because it is futile, where the proposed "all due care" qualified immunity defense is entirely inconsistent with the City's original negligence defense and legally insufficient. Finally, in his supplemental brief, Baldwin argues that the City cannot assert an immunity defense, because the Iowa Municipal Tort Claims Act eliminates any common-law immunity of the City, which Baldwin asserts includes Iowa's new "all due care" immunity. He also argues that there is no mention in cases from the common-law era of a qualified immunity defense for a municipality based on the good faith of municipal officers, so that the City never had such a defense at common law.

In the portion of its supplemental brief addressing its request for leave to amend its Answer, the City argues that seeking leave to amend without undue delay, based on a new development in the law, as it did, here, is precisely the kind of "circumstance" in which justice requires that leave to amend be granted. The City also points out that it is the sole remaining defendant and that it is properly allowed to plead and prove the due care of its officers as a defense. The City contends that an adjudication that the officers exercised due care bars a plaintiff's vicarious-liability claim against a municipality. Contrary to Baldwin's contentions, the City argues that IOWA CODE § 670.4(1)(c) specifically provides for municipal immunity for any claim based upon an act or omission of an officer or employee exercising due care in the execution of a statute, ordinance, or regulation, whether the statute, ordinance, or regulation is valid. Thus, the City argues that it is entitled to plead and prove the officers' due care in order to establish its immunity.

## B.    Analysis

### 1.    Applicable standards

As the Eighth Circuit Court of Appeals recently explained,

> "[A] motion for leave to amend filed outside the district court's Rule 16(b) scheduling order requires a showing of good cause." *Williams v. TESCO Servs., Inc.*, 719 F.3d 968, 977 (8th Cir. 2013); *see* Fed. R. Civ. P. 16(b)(4). "The primary measure of good cause is the movant's diligence." *Harris v. FedEx Nat'l LTL, Inc.*, 760 F.3d 780, 786 (8th Cir. 2014) (quotation omitted). "We generally will not consider prejudice [to the nonmovant] if the movant has not been diligent in meeting the scheduling order's deadlines." *Hartis v. Chi. Title Ins. Co.*, 694 F.3d 935, 948 (8th Cir. 2012) (quotation omitted). We review the district court's denial of the motion to amend for abuse of discretion, but we review *de novo* whether the proposed amendments would have been futile. *United States ex rel. Joshi v. St.*

> *Luke's Hosp., Inc.*, 441 F.3d 552, 555 (8th Cir.), *cert. denied*, 549 U.S. 881, 127 S.Ct. 189, 166 L.Ed.2d 142 (2006).

*Kmak v. Am. Century Companies, Inc.*, 873 F.3d 1030, 1034 (8th Cir. 2017); *Kozlov v. Associated Wholesale Grocers, Inc.*, 818 F.3d 380, 395 (8th Cir. 2016) ("Rule 15(a) does not apply when, as here, the 'district court has established a deadline for amended pleadings under FRCP 16(b),'" and, instead, the movant must show "good cause" pursuant to Rule 16(b)(4) (quoting *In re Graphics Processing Units Antitrust Litig.*, 540 F. Supp. 2d 1085, 1090 (N.D. Cal. 2007)).

As to diligence, the court concluded in *Kmak* that the plaintiffs had not been diligent in seeking leave to amend, because "[t]he new claims were legal variations on a theme the parties had been litigating for years." 873 F.3d at 1034. The court also agreed with the district court's reasons for finding unpersuasive the plaintiffs' excuse that only last-minute discovery first gave them a hint that the new claims existed. *Id*. at 1035. In *Kozlov*, the court also concluded that the movant had not acted diligently, because the movant had access to almost all the relevant evidence at least eighteen months before the motion to amend was filed. *Kozlov*, 818 F.3d at 395. Also, "[w]here there has been 'no change in the law, no newly discovered facts, or any other changed circumstance . . . after the scheduling deadline for amending pleadings,' then [courts] may conclude that the moving party has failed to show good cause." *Hartis v. Chicago Title Ins. Co.*, 694 F.3d 935, 948 (8th Cir. 2012) (quoting *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 718 (8th Cir. 2008)).

"Motions [to amend] that would prejudice the nonmoving party by 'requiring a re-opening of discovery with additional costs, a significant postponement of the trial, and a likely major alteration in trial tactics and strategy' are particularly disfavored." *Kozlov*, 818 F.3d at 395 (quoting *Steir v. Girl Scouts of the U.S.A.*, 383 F.3d 7, 12 (1st Cir. 2004)). Thus, in *Kozlov*, the court affirmed the denial of leave to amend where the

amendment "would have required more discovery and new experts because negligent hiring was never alleged before this request to amend." *Id.* Similarly, in *Kmak*, the court concluded that denial of leave to amend was appropriate, because the amendment would have resulted in undue delay as well as prejudice to the defendant by forcing it to re-litigate the dispute on new bases, requiring additional and costly discovery, and depriving it of the meaningful value of a prior summary judgment ruling. *Kmak*, 873 F.3d at 1035 (citing *Sanders v. Venture Stores, Inc.*, 56 F.3d 771, 774 (7th Cir. 1995)).

Finally, "[d]enial of a motion for leave to amend on the basis of futility 'means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.'" *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010) (quoting *Cornelia I. Crowell GST Trust v. Possis Med., Inc.*, 519 F.3d 778, 782 (8th Cir. 2008)). Thus, a proffered amendment may be futile, if the proposed amendment is deficient as a matter of law or contrary to a determination that the court has already made. *See Mississippi River Revival, Inc. v. City of Minneapolis, Minn.*, 319 F.3d 1013, 1018 (8th Cir. 2003).[2]

### 2. *Application of the standards*

Here, contrary to Baldwin's assertions, I conclude that the City has met the "good cause" requirement for amending its Answer, even though the amendment is offered well after expiration of the deadline in the original Scheduling Order. *See Kmak*, 873 F.3d at 1034; FED. R. CIV. P. 16(b)(4). I find that the City has been diligent in seeking leave to amend to assert the new "all due care" affirmative defense. *See id.* (stating that diligence is the "primary measure" of good cause (internal quotation marks and citations omitted)).

---

[2] A proffered amendment may also be futile if it fails to cure the pleading deficiencies that led to prior dismissal of a claim or defense, *see In re Medtronic, Inc. v. Sprint Fidelis Leads Prods. Liab. Litig.*, 623 F.3d 1200, 1208 (8th Cir. 2010), but that situation is not presented here.

Furthermore, I find unpersuasive Baldwin's assertions of prior failure to plead the defense, prejudice, and futility.

First, the City was diligent in that it acted promptly to amend its Answer to assert the newly-defined affirmative defense by filing its request to amend within two weeks of the Iowa Supreme Court handing down the decision adopting the new defense. *Compare Kozlov*, 818 F.3d at 395 (concluding the movant was not diligent where he waited at least eighteen months after the *factual* basis for his claim was apparent before seeking leave to amend). Second, the Iowa Supreme Court's answer to the certified question in this case created a qualified immunity affirmative defense based on "all due care" that *neither* party had advanced in this court or before the Iowa Supreme Court. Baldwin does not dispute the City's assertion that he argued for "strict liability" for violation of the Iowa Constitution, with no immunity defense, while the City argued for "qualified immunity" following federal law. It is plain that the Iowa Supreme Court considered and rejected both of these suggestions in its ruling and, instead, opted for an "all due care" qualified immunity defense that was not advanced by either party.[3] Even to the extent that the proposed new defense is just a "legal variation[] on a theme the parties had been litigating for years," *see Kmak*, 873 F.3d at 1034, it is a "variation" in an unforeseen tonality, not just in a new key. Thus, this is a situation in which there *was* a significant "change in the law," resulting in "changed circumstances" that could not have been reasonably foreseen by the parties in this case. *Compare Hartis*, 694 F.3d at 948 (finding a lack of diligence "[w]here there ha[d] been no change in the law, no newly discovered facts, or any other changed circumstance . . . after the scheduling deadline for amending pleadings" (internal quotation marks and citation omitted)).

---

[3] While it is possible that someone might have divined the possibility of such a defense from the Iowa statutes and cases on which the Iowa Supreme Court relied in fashioning such a defense to Iowa constitutional tort claims, I do not believe that "diligence" requires foresight approaching clairvoyance.

I am not persuaded by Baldwin's contention that the defense was not pleaded. I note that the defendants did not plead an affirmative defense based only on "qualified immunity," as adopted by the federal courts for federal constitutional claims, as Baldwin seems to contend. Rather, the defendants pleaded more generally that "[d]efendants are immune from suit," which might reasonably encompass the "all due care" qualified immunity affirmative defense subsequently adopted by the Iowa Supreme Court.

Nor am I persuaded by Baldwin's argument that he would be unduly prejudiced by the amendment. It is true that such things as delay of the disposition of the case, the costs of additional discovery, alteration of trial strategy, and loss of the benefit of a previously obtained summary judgment might constitute prejudice. *See Kmak*, 873 F.3d at 1035; *Kozlov*, 818 F.3d at 395. Here, however, Baldwin's arguments that more discovery or alteration of his trial strategy (such as whether or not he can use the defendants' admission of "negligence" at trial) will be required by the amendment are belied by his renewed assertion that he is entitled to summary judgment on his Iowa constitutional claims, even in light of the newly-adopted "all due care" qualified immunity defense, *on the existing record*. Also, neither party contended in its status reports after the Iowa Supreme Court answered the certified question that more discovery would be required before proceeding to summary judgment or trial. Some adjustment of trial strategies is necessarily required *for both parties* when new, controlling law changes the requirements for proof of a claim or defense, as is the case, here. Thus, the adjustment of strategies to new *law* is not the sort of prejudice that should preclude an amendment. *Compare Kozlov*, 818 F.3d at 395 (finding prejudice from alteration of tactics and the need for additional discovery based on a newly-pleaded, but long-recognized claim); *Kmak*, 873 F.3d at 1035 (same).

Also, I am not persuaded by Baldwin's assertion that the proposed amendment to assert an "all due care" qualified immunity defense is futile. While it is possible that the City might not *win* on that defense, for some of the reasons stated by Baldwin, it is not

plain to me that the City's reliance on the new defense is deficient as a matter of law or contrary to a determination that the court has made or, for that matter, contrary to admissions that the City has made, that the officers were "negligent." *Zutz*, 601 F.3d at 850; *Mississippi River Revival, Inc.*, 319 F.3d at 1018 (an amendment may be futile if it is contrary to determinations the court has already made). Although the defendants asserted that the officers' mistaken belief about the adoption of IOWA CODE CH. 321I into the City's Code of Ordinances "was nothing more than negligence," I am not convinced that is an admission that the officers *were* negligent as much as it is an argument that Baldwin cannot possibly show anything more than negligence on any reasonable construction of the facts. Certainly, I never held that the officers' conduct was negligent in all relevant respects, even if I acknowledged that the defendants had *argued* that the record shows no more than negligence. Baldwin's argument that no reasonable juror could find that the officers exercised "all due care" applies a summary judgment standard, rather than the applicable Rule 12(b) standard for leave to amend. *Zutz*, 601 F.3d at 850. To put it another way, allowing the City to amend its Answer to assert an "all due care" qualified immunity defense over Baldwin's "futility" objection would not be inconsistent with or otherwise prevent me from granting summary judgment in favor of Baldwin on that defense on his Motion For Partial Summary Judgment, as supplemented

Baldwin's last argument is that the City is not entitled to assert a qualified immunity defense based on the allegation that its officers acted with "all due care." Baldwin is correct that IOWA CODE § 670.2 provides, in pertinent part, as follows:

> Except as otherwise provided in this chapter, every municipality is subject to liability for its torts and those of its officers and employees, acting within the scope of their employment or duties, whether arising out of a governmental or proprietary function.

IOWA CODE § 670.2(1). Baldwin is also correct that, in 1976, the Iowa Supreme Court explained that the predecessor of this statutory provision, then codified at IOWA CODE

§ 613A.2, meant that "[a]ny common-law immunity in tort previously accorded governmental subdivisions was eliminated except for those torts specifically excluded by [then] § 613A.4, [now § 670.4]." *Symmonds v. Chicago, M., St. P. & P.R. Co.*, 242 N.W.2d 262, 264 (Iowa 1976) (citing *Jahnke v. Incorporated City of Des Moines*, 191 N.W.2d 780, 782 (Iowa 1971)). Nevertheless, I do not find that Baldwin's argument presents an insuperable bar to the City's amendment to plead the defense. *Id.* (applying Rule 12(b) standards to determine futility).

There are at least three flaws to Baldwin's assertion that this statutory provision bars the "all due care" of officers as a defense to municipal liability, at least based on the present state of the law. First, the "all due care" qualified immunity defense is not a common-law immunity "previously accorded" municipalities, as of the time of the adoption of the predecessor of IOWA CODE § 670.2(1). *See Symmonds*, 242 N.W.2d at 264. Rather, as the parties are well aware, it is a qualified immunity defense just adopted by the Iowa Supreme Court and applicable specifically to tortious violations of the Iowa Constitution, which were also just recognized as the basis for claims for damages. In answering the certified question in this case, the Iowa Supreme Court recognized that Iowa courts have a role in crafting a remedy for a claim for damages for a violation of the Iowa Constitution as established in *Godfrey*. *Baldwin*, 915 N.W.2d at 276. Thus, any prior abrogation of common-law immunities is inapplicable to the Iowa Supreme Court's subsequent adoption of a qualified immunity defense to newly-recognized Iowa constitutional claims.

Second, as the City argues, IOWA CODE § 670.4(1)(c) provides, in pertinent part, as follows:

> 1. The liability imposed by section 670.2 shall have no application to any claim enumerated in this section. . . .
>
> c. Any claim based upon an act or omission of an officer or employee of the municipality, *exercising due care*, in the execution of a statute, ordinance, or regulation whether the

statute, ordinance or regulation is valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the municipality or an officer or employee of the municipality, whether or not the discretion is abused.

IOWA CODE § 670.4(1)(c) (emphasis added). Thus, to the extent that the Iowa Municipal Tort Claims Act applies to the Iowa constitutional claims at issue, the immunity of the City for acts of its officers "exercising due care" is established *by statute*.[4]

Third, contrary to Baldwin's assertions, in answering the certified question in this case, the Iowa Supreme Court *did* address whether a municipal defendant, as well as an individual defendant, may assert the new qualified immunity defense. *Only* the City was a defendant in this case, after I granted summary judgment on Baldwin's federal constitutional claim and false arrest claim, because *only* the City was named as a defendant on Baldwin's Iowa constitutional claims in the first place. Thus, at the time of certification of the question to the Iowa Supreme Court, the City was the only remaining defendant. The question I certified was not specifically limited to either municipal or individual defendants, because it was phrased in terms of whether "a defendant" can raise a defense of qualified immunity to an individual's claim for damages for the violations of the Iowa Constitution at issue, here. Thus, the Iowa Supreme Court was plainly aware that the *only* defendant in question was the City, but that court also did not formulate the qualified immunity defense in terms that limited its application only to individual officers *or* a municipality.[5]

---

[4] One of the questions that the Iowa Supreme Court expressly left open, when answering the certified question, was "the potential applicability of provisions in chapters 669 and 670 other than sections 669.14 and 670.4." *Baldwin*, 915 N.W.2d at 281.

[5] I add that the Eighth Circuit Court of Appeals has recognized that, under Minnesota common law, a municipality enjoys vicarious official immunity where its officers are entitled to immunity. *See Smith v. City of Minneapolis*, 754 F.3d 541, 549

Although I believe the Iowa Supreme Court addressed the question of whether the City could assert qualified immunity, the dissenters to the decision answering the certified question stated,

> [T]he issue of municipal liability for damages caused by the unconstitutional conduct of its employees was not presented by the parties in this case, is not addressed in the majority opinion, and is reserved for another day.

*Baldwin*, 915 N.W.2d at 283 (Appel, J., joined by Hecht, J., dissenting). The dissenters pointed out—and Baldwin now does the same—that, in *Owen v. City of Independence*, 445 U.S. 622 (1980), the United States Supreme Court had observed that "'in the hundreds of cases from [the common law] era awarding damages against municipal governments for wrongs committed by them, one searches in vain for much mention of a qualified immunity based on the good faith of municipal officers.'" *Baldwin*, 915 N.W.2d at 282 (Appel, J., joined by Hecht, J., dissenting) (quoting *Owen*, 445 U.S. at 641). If, as the dissenters assert, the majority did not address whether a municipality can be liable for damages for unconstitutional conduct of its employees, then it necessarily did not address whether a municipality has qualified immunity for unconstitutional conduct for which its employees have qualified immunity.

Whether the City can assert qualified immunity based on its officers' conduct is a question that could have been expressly certified to the Iowa Supreme Court at the same time I certified the question of whether a defendant can assert qualified immunity to an Iowa constitutional claim, and we could have already obtained an authoritative answer to that question, as well. *See, e.g., Arizonans for Official English v. Arizona*, 520 U.S. 43,

---

(8th Cir. 2014) (citing *Schroeder v. St. Louis Cnty.*, 708 N.W.2d 497, 508 (Minn. 2006) (en banc), which states, "In general, when a public official is found to be immune from suit on a particular issue, his government employer will enjoy vicarious official immunity from a suit arising from the employee's conduct."). Thus, application of the qualified immunity of the officers to the City is not without precedent.

76 (1997) ("Certification procedure . . . allows a federal court faced with a novel state-law question to put the question directly to the State's highest court, reducing the delay, cutting the cost, and increasing the assurance of gaining an authoritative response."). Neither the parties nor I thought of doing so, however, probably because the City was the only remaining defendant at the time that I certified the question of the availability of a qualified immunity defense to the Iowa Supreme Court.

The dissenter's position notwithstanding, I conclude, subject to subsequent determination to the contrary by the Iowa Supreme Court, that the newly-adopted "all due care" qualified immunity defense is available to a municipality, such as the City.

### 3. Summary

Because I conclude that the newly-adopted "all due care" qualified immunity defense is available to a municipality, such as the City, under my reading of existing Iowa law, I **grant** the City's Motion For Leave To Amend Answer in order to assert Iowa's new "all due care" qualified immunity affirmative defense.

## III. THE RENEWED MOTION FOR SUMMARY JUDGMENT

### A. The Pending Motion

When I lifted the stay in this case, the unresolved portions of the parties' cross-motions for summary judgment were reanimated as far as they concerned the application of Iowa's new "all due care" qualified immunity defense to the facts of this case. In his supplemental brief, Baldwin also seeks summary judgment that the defendants acted in reckless disregard of his rights under article I of the Iowa Constitution, as a gateway to a jury award of punitive damages, and a determination that he is entitled to attorney's fees.

The defendants' argument on the merits of the Iowa Constitutional claims in response to Baldwin's original motion for summary judgment on those claims was that,

at that time, no Iowa case had judicially implied a private right of action for a violation of the Iowa Constitution. That contention is no longer viable in light of *State v. Godfrey*, 898 N.W.2d 844 (Iowa 2017). Similarly, in support of the defendants' Second Motion For Summary Judgment, the defendants argued only that they were entitled to qualified immunity to the Iowa constitutional claims under the federal standard, which also is no longer viable in light of the Iowa Supreme Court's answer to the certified question. In its supplemental brief, the City does not renew a request for summary judgment on its qualified immunity defense, as that defense has been adopted by the Iowa Supreme Court. Rather, the City asserts simply that genuine issues of material fact on the new defense should defeat Baldwin's Motion For Partial Summary Judgment, as supplemented. Thus, defendants' Second Motion For Summary Judgment is **denied as moot**.

Consequently, all that remains to be resolved are the part of Baldwin's August 11, 2016, Motion For Partial Summary Judgment, as supplemented, concerning his Iowa constitutional claims and the parts of his supplemental brief, filed on August 5, 2018, raising the issues of reckless disregard and attorney's fees.

Before considering any of the issues raised in Baldwin's Motion For Partial Summary Judgment, as supplemented, I will summarize the standards for summary judgment.

## B.  *Summary Judgment Standards*

Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact *and* that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c) (emphasis added); *see Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) ("Summary judgment is appropriate if viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law."); *see*

*generally Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, "[t]he movant 'bears the initial responsibility of informing the district court of the basis for its motion,' and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Celotex*, 477 U.S. at 323). In response, "[t]he nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)).

When the parties have met their burdens, the district judge's task is as follows:

> "On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.'" *Ricci v. DeStefano*, ––– U.S. ––––, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009) quoting *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (internal quotations omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). . . . . "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Ricci*, 129 S. Ct. at 2677, quoting *Matsushita*, 475 U.S. at 587, 106 S. Ct. 1348.

*Torgerson*, 643 F.3d at 1042-43.

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ryan v. Capital Contractors, Inc.*, 679

F.3d 772, 776 (8th Cir. 2012). However, summary judgment is particularly appropriate when only questions of law are involved, rather than factual issues that may or may not be subject to genuine dispute. *See, e.g., Cremona v. R.S. Bacon Veneer Co.*, 433 F.3d 617, 620 (8th Cir. 2006).

## C. The Iowa Constitutional Claims

In his Motion For Partial Summary Judgment, as supplemented, Baldwin first seeks summary judgment on his claims for violations of the Iowa Constitution. More specifically, he seeks summary judgment that his rights under article I, §§ 1 and 8 of the Iowa Constitution were violated and that the City is not entitled to the newly-adopted "all due care" affirmative defense. I believe that the claim or claims that Baldwin asserts under the Iowa Constitution require some further clarification.

### 1. Nature of the claim or claims

In Count I of his Petition, Baldwin alleges that the City, through its officers, acting within the scope of their employment, violated his rights under article I, § 8 of the Iowa Constitution, when the officers took him into custody without probable cause to believe that a criminal offense had been committed. In Count III, he alleges that the City, through its officers, acting within the scope of their employment, violated his rights under article I, § 1 of the Iowa Constitution, when the officers took him into custody without a criminal offense having been committed. Although Baldwin has asserted two claims in two counts of his Petition, I believe that he is actually asserting only a single claim of a violation of the Iowa Constitution.

I reach this conclusion based on Baldwin's arguments in his original summary judgment motion and in his supplemental brief. Baldwin asserts in both that, by analogy to equal protection law under the Iowa Constitution, which the Iowa Supreme Court held "arises out of the confluence of article I, section 1 and article I, section 6," *McQuistion v. City of Clinton*, 872 N.W.2d 817, 830 n.6 (Iowa 2015), search and seizure law under

the Iowa Constitution arises out of the "confluence" of article I, § 1 and article I, § 8, where article I, § 1 protects individuals' rights, while article I, § 8, prevents the government from engaging in unreasonable searches and seizures. Thus, Baldwin appears to assert only one violation of the Iowa Constitution, based on this "confluence" of the two sections. Indeed, in his now reanimated Motion For Partial Summary Judgment, he argues that "the Defendants, acting under color of state law, arrested and jailed [him] without probable cause in violation of his article I, section 8, [and] article I, section 1 . . . rights." Similarly, in his supplemental brief, based on a single discussion of whether there was probable cause, he argues, "Concerning whether [his] article I rights were violated, there is no genuine issue of material fact, and [he] is entitled to judgment as a matter of law."

Thus, there is only one Iowa constitutional claim at issue, based on a lack of probable cause for Baldwin's arrest, in violation of Baldwin's right to be free of an unreasonable search and seizure, even though that single claim is based on two provisions of the Iowa Constitution and was pleaded in two counts.

### 2.     The Iowa constitutional violation

#### a.     Arguments of the parties

Baldwin argues that an unreasonable search and seizure claim under article I, §§ 1 and 8 of the Iowa Constitution is not coextensive with such a claim under the Fourth Amendment to the United States Constitution. He points out that I concluded that the officers made a mistake of law, which supported probable cause under the Fourth Amendment, but he contends that such a mistake of law is not sufficient to satisfy the Iowa Constitution, because, under the Iowa Constitution, neither good faith nor a mistake of law, whether reasonable or not, supports probable cause. It appears that the only argument that the City raises concerning whether or not there was a violation of the Iowa Constitution is its contention that, at the very least, reasonable reliance by the officers on a facially valid warrant means that there is a jury question with respect to whether the

challenged conduct of the officers breached a duty not to arrest Baldwin without probable cause.

### b.    Discussion

#### i.    Requirements of the Iowa Constitution

The Iowa Supreme Court has explained, "Both the Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution prohibit unreasonable searches and seizures by the government." *State v. Tyler*, 830 N.W.2d 288, 291 (Iowa 2013); *State v. Cline*, 617 N.W.2d 277, 281 (Iowa 2000), *overruled on other grounds by State v. Turner*, 630 N.W.2d 601, 606 (Iowa 2001).[6] Almost a quarter of a century ago, the Iowa Supreme Court stated,

> We have consistently declined to provide greater protection under article I, section 8 of the Iowa Constitution than the United States Supreme Court has found in the Fourth Amendment. *See [State v.] Scott*, 409 N.W.2d [465,] 467 [(Iowa 1987)]; *Kain v. State*, 378 N.W.2d 900, 902 (Iowa 1985); *State v. Groff*, 323 N.W.2d 204, 207 (Iowa 1982); *State v. Roth*, 305 N.W.2d 501, 507 (Iowa 1981); *[State v.] Olsen*, 293 N.W.2d [216,] 220 [(Iowa 1980)].

*State v. Beckett*, 532 N.W.2d 751, 755 (Iowa 1995). Indeed, at least as late as 2004, in *State v. Tague*, 676 N.W.2d 197 (Iowa 2004), which the Iowa Supreme Court stated it had "decided under the Iowa Constitution," the court "applied the federal standards of probable cause and reasonable suspicion under the Fourth Amendment to article I, section 8 of the Iowa Constitution." *State v. Scheffert*, 910 N.W.2d 577, 582 (Iowa 2018) (citing *Tague*, 676 N.W.2d at 201, 204, 206).

---

[6] In *Turner*, the Iowa Supreme Court explained that *Cline* was overruled only as to the "scope of review with respect to factual findings of the district court in cases alleging constitutional error." 630 N.W.2d at 606 n.2.

It is clearly no longer the case that the Iowa Constitution provides no greater protection than the United States Constitution from unreasonable searches and seizures, however. By 2013, the Iowa Supreme Court had taken the quite different position that it had "consistently stated [that] '[w]e jealously protect this court's authority to follow an independent approach [to evaluating claims made] under our state constitution." *Tyler*, 830 N.W.2d at 291 (quoting *State v. Pals*, 805 N.W.2d 767, 771 (Iowa 2011)). More specifically, in *Pals*, the Iowa Supreme Court explained that this "consistent" independence ran from at least 2000:

> Pals brings [search and seizure] claims under both the Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution. While these provisions use nearly identical language and were generally designed with the same scope, import, and purpose, we jealously protect this court's authority to follow an independent approach under our state constitution. *State v. Ochoa*, 792 N.W.2d 260, 267 (Iowa 2010). In *Ochoa*, we explained:
>
> > [W]hile United States Supreme Court cases are entitled to respectful consideration, we will engage in independent analysis of the content of our state search and seizure provisions.... The degree to which we follow United States Supreme Court precedent, or any other precedent, depends solely upon its ability to persuade us with the reasoning of the decision.
>
> *Id*. Our approach to independently construing provisions of the Iowa Constitution that are nearly identical to the federal counterpart is well supported in our case law and the law of other jurisdictions. *See, e.g., Ochoa*, 792 N.W.2d at 267; *State v. Cline*, 617 N.W.2d 277, 285 (Iowa 2000), *overruled on other grounds by [State v.] Turner*, 630 N.W.2d [601,] 606 [(Iowa 2001)]. Even where a party has not advanced a different standard for interpreting a state constitutional provision, we may apply the standard more stringently than

federal case law. *State v. Bruegger*, 773 N.W.2d 862, 883 (Iowa 2009). When, as here, a defendant raises both federal and state constitutional claims, the court has discretion to consider either claim first or consider the claims simultaneously. *Ochoa*, 792 N.W.2d at 267.

*Pals*, 805 N.W.2d at 771–72.[7] As the Iowa Supreme Court explained in 2000, in a case cited in *Pals*,

[T]here is no principle of law that requires this court to interpret the Iowa Constitution in line with the United States Constitution, as long as our interpretation does not violate any provision of the federal constitution. In other words, although this court cannot interpret the Iowa Constitution to provide *less* protection than that provided by the United States Constitution, the court is free to interpret our constitution as providing *greater* protection for our citizens' constitutional rights.

*Cline*, 617 N.W.2d at 284-85 (citations omitted).

Furthermore, as the Iowa Supreme Court explained in *Tyler*,

Where a party raises both state and federal constitutional claims but does not argue that a standard independent of the federal approach should be employed under the state constitution, we ordinarily apply the substantive federal standards *but reserve the right to apply the standard in a fashion different from federal precedent. State v. Bruegger*, 773 N.W.2d 862, 883 (Iowa 2009).

*Tyler*, 830 N.W.2d at 291-92 (emphasis added). In *Tyler*, because the defendant had not proposed a standard for interpreting the search and seizure provisions of the Iowa

_____

[7] Indeed, in 1980, the Iowa Supreme Court had already asserted, "We have an interest in harmonizing our constitutional decisions with those of the Supreme Court when reasonably possible, *even though we recognize and will jealously guard our right and duty to differ in appropriate cases*." *See State v. Olsen*, 293 N.W.2d 216, 219 (Iowa 1980) (emphasis added).

Constitution differently from the federal counterpart, the court applied federal standards. *Id*. at 292. That is not the case, here, where Baldwin has consistently argued that he is entitled to recover on his claims under the Iowa Constitution, even if he is not entitled to recover on his claims under the Fourth Amendment to the United States Constitution, because the standards are different.

One critical distinction between Iowa constitutional standards and federal constitutional standards for search and seizure cases, as Baldwin argues, is that the Iowa Supreme Court has held "that the good faith exception to the exclusionary rule does not apply under Iowa law." *Cline*, 617 N.W.2d at 278. The court explained,

> One of the fundamental guarantees of the Iowa Constitution is the protection of its citizens against unreasonable searches and seizures. *We believe that the only effective way to ensure that this right is more than mere words on paper is to exclude illegally obtained evidence. The reasonableness of a police officer's belief that the illegal search is lawful does not lessen the constitutional violation. For the reasons we have already discussed, the United States Supreme Court's rationale justifying the adoption of a good faith exception is neither sound nor persuasive. Therefore, we hold that the good faith exception is incompatible with the Iowa Constitution.* This court will simply not "condone and approve a clear and known violation of a fundamental constitutional right in order to sustain a conviction that we think correct." *State v. McClelland*, 164 N.W.2d 189, 200 (Iowa 1969) (Becker, J., dissenting), *overruled by State v. Bester*, 167 N.W.2d 705, 707–08 (Iowa 1969). To do so would elevate the goals of law enforcement above our citizens' constitutional rights, a result not supported by any principle of constitutional law.

*Cline*, 617 N.W.2d at 292-93 (emphasis added).

Another critical distinction between the Iowa constitutional standards and the federal constitutional standards for search and seizure cases, as Baldwin argues, is that the Iowa Supreme Court "ha[s] elected not to extend this permissiveness [of justifying a

traffic stop on the basis of a mistake of fact] to mistakes of law, holding a mistake of law is not sufficient to justify a stop." *Tyler*, 830 N.W.2d at 294; *accord Scheffert*, 910 N.W.2d at 585 ("We held in *Tyler* that a mistake of law is not sufficient to meet the State's burden to justify a stop."). Thus, "'[e]vidence derived from a stop based on a law enforcement officer's mistake of law must be suppressed.'" *Id.* (quoting *State v. Louwrens*, 792 N.W.2d 649, 650 (Iowa 2010)). In short, "the mistake-of-law doctrine is broader under the United States Constitution than it is under the Iowa Constitution," because Iowa does not recognize even a *reasonable* mistake of law as supporting probable cause or reasonable suspicion. *Scheffert*, 810 N.W.2d at 585 n.2. The Iowa Supreme Court has maintained this distinction even after the United States Supreme Court decided in *Heien v. North Carolina*, 135 S.Ct. 530, 539–40 (2014), that a reasonable mistake of law could support reasonable suspicion for a traffic stop. *Scheffert*, 910 N.W.2d at 585 n.2; *State v. Coleman*, 890 N.W.2d 284, 298 n.2 (Iowa 2017) ("Of course, the ruling in *Tyler* under the Iowa Constitution is unaffected by *Heien*. Further, the approach in *Heien* would be very difficult to square with our rejection of the good-faith exception to the exclusionary rule under article I, section 8 of the Iowa Constitution in *Cline*, 617 N.W.2d at 293.").

### ii.    *Application of the Iowa standards*

In my prior summary judgment ruling, when I addressed Baldwin's *federal* constitutional claim based on arrest without probable cause, I concluded that the officers did not have probable cause based on a mistaken belief that City Ordinance E321I.10 existed, because "this kind of mistake of law is entirely different from the mistake in *Heien*." *Baldwin*, 218 F. Supp. 3d at 999. I explained that, in *Heien*, the mistake "arose from an officer's uncertainty about the meaning of statutory language that had not previously been construed by the courts," but "the mistake at issue, here, is the result of 'a sloppy study of the laws [the officers were] duty-bound to enforce.'" *Id.* (quoting *Heien*, 135 S. Ct. at 539-40). That mistake of law is just as plainly inadequate to support

28

probable cause for purposes of an Iowa constitutional claim, where the Iowa Supreme Court does not recognize even a *reasonable* mistake of law under *Heien* as sufficient to avoid a violation of the Iowa Constitution. *Scheffert*, 910 N.W.2d at 585 n.2; *Coleman*, 890 N.W.2d at 298 n.2.

I also find unavailing the City's argument that, at the very least, reasonable reliance by the officers on a facially valid warrant to arrest Baldwin for a violation of the non-existent ordinance means that there is a jury question with respect to whether the challenged conduct of the officers breached the probable cause requirement. In *Cline*, the Iowa Supreme Court expressly rejected *United States v. Leon*, 468 U.S. 897, 922 (1984), which held that, if a police officer relied in objectively good faith upon a search warrant in making a search, the fruits of the officer's search should not be suppressed. The Iowa Supreme Court pointed out that, in *Leon*, the premise for the good-faith exception was that the exclusionary rule should only be adopted in situations in which it accomplished its deterrent effect, which was to deter police misconduct, rather than errors of judges and magistrates, and there would be no deterrent effect when the offending officers acted in objectively reasonable reliance on a warrant. *Cline*, 617 N.W.2d at 284. The court reiterated its rejection of *Leon*, because it believed that "[c]ommon sense tells us that the exclusionary rule prompts more care and attention at all stages of the warrant-issuing process, including by the judicial officers issuing the warrant." *Id*. at 290. Thus, the City cannot assert that probable cause existed based on a good faith belief that the magistrate issued a valid warrant for arrest, when the basis for the warrant was the violation of a non-existent ordinance.

Under both Iowa constitutional and federal constitutional standards, "the State is *not* limited to the reasons stated by the investigating officer in determining whether either probable cause or reasonable suspicion existed for the stop [or arrest]." *Tyler*, 830 N.W.2d at 295 (citing *State v. Heminover*, 619 N.W.2d 353, 357 (2000)); *Cline*, 617 N.W.2d at 281. As to the *federal* constitutional claims, I concluded that there was

probable cause, even though there was no basis in an ordinance that didn't exist, because there was factual support for probable cause for a violation of an *alternative* ordinance, City Ordinance 219–2(2), even though the officers had not relied on it. *Id*. at 1000-01. As to the Iowa District Court's subsequent conclusion that City Ordinance 219–2(2) also was not violated, I explained,

> The Iowa District Court's constructions would establish no more than a mistake of law as to the applicability of the prohibition in Ordinance 219–2(2) to Baldwin's driving his ATV in the ditch. That mistake was of the same kind as the mistake of law at issue in *Heien*, involving an arguable reading of uncertain language in the law. *See Heien*, 135 S.Ct. at 540. The Iowa District Court's after-the-fact constructions do not establish that a prudent person could not have believed, at the time of Baldwin's alleged offense, that he had committed a violation of Ordinance 219–2(2). *Williams [v. City of Alexander, Ark.]*, 772 F.3d [1307,] 1310 [(8th Cir. 2014)].

*Baldwin*, 218 F. Supp. 3d at 1001.

The same determination under the Iowa Constitution is untenable after the Iowa Supreme Court's decisions in *Cline* and *Tyler*, however. In *Cline*, in its examination of good faith exceptions to probable cause under the federal constitution, the Iowa Supreme Court explained,

> The [United States Supreme] Court applied the good faith exception under different factual circumstances in *[Illinois v.] Krull*, [480 U.S. 340 (1987)]. In that case, the police obtained evidence in a warrantless search authorized by a state statute that was subsequently declared unconstitutional. *Krull*, 480 U.S. at 343–44, 107 S.Ct. at 1163–64, 94 L.Ed.2d at 370–71 (statute authorized warrantless administrative search of records maintained by persons licensed to sell motor vehicles). The United States Supreme Court held that suppression of the evidence was not required because the *Leon* good faith exception to the

exclusionary rule applied. *Id*. at 349, 107 S.Ct. at 1167, 94 L.Ed.2d at 375. The Court stated:

> Unless a statute is clearly unconstitutional, an officer cannot be expected to question the judgment of the legislature that passed the law. If the statute is subsequently declared unconstitutional, excluding evidence obtained pursuant to it prior to such a judicial declaration will not deter future Fourth Amendment violations by an officer who has simply fulfilled his responsibility to enforce the statute as written.

*Id*. at 349–50, 107 S.Ct. at 1167, 94 L.Ed.2d at 375.

*Cline*, 617 N.W.2d at 284. Later in its opinion, the court in *Cline* added the following further explanation of *Krull*:

> [I]n *Krull*, the Court held that the exclusionary rule would not deter illegal police conduct when the officer, in conducting the search, has relied on a state statute that is not clearly unconstitutional. 480 U.S. at 349–50, 107 S.Ct. at 1167, 94 L.Ed.2d at 375. In view of the allegedly nonexistent deterrent effect of the rule under these various circumstances, the Court stated that application of the rule could not be justified in view of the "substantial costs of exclusion." *Leon*, 468 U.S. at 922, 104 S.Ct. at 3420, 82 L.Ed.2d at 698; *accord Krull*, 480 U.S. at 352–53, 107 S.Ct. at 1168–69, 94 L.Ed.2d at 377.

*Cline*, 617 N.W.2d at 288-89.

The Iowa Supreme Court rejected *Krull's* rationale, again, because it concluded that "[c]ommon sense tells us that the exclusionary rule prompts more care and attention at all stages of the warrant-issuing process, including by the judicial officers issuing the warrant." *Id*. at 290. Furthermore, the court explained, "Not only is the [United States Supreme] Court's rationale in support of the good faith exception suspect, it also ignores the grave consequences of the significant limitation imposed on the exclusionary rule by the good faith exception." *Id*. Specifically,

> Adopting a good faith exception would effectively defeat the purpose of the search and seizure clause. In the future, so long as the police act in good faith, probable cause would not be required for a warrant. As one court has observed, the probable cause standard would be replaced by a standard of "close enough is good enough." [Citation omitted]. . . .
>
> A second undesirable consequence of the adoption of a good faith exception is that persons subjected to an unconstitutional search or seizure would generally be left with no remedy at all. . . . There is simply no meaningful remedy available to one who has suffered an illegal search other than prohibiting the State from benefiting from its constitutional violation. A civil remedy would probably be unsuccessful because the good faith that prevents exclusion would also preclude an action for damages. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396, 410 (1982).

*Cline*, 617 N.W.2d at 290-91 (citation omitted).

It is important to recognize that the Iowa Supreme Court rejected *Krull*, in which the officers relied on a state statute that was *subsequently* declared unconstitutional. *Id*. at 288. Here, the alternative basis for probable cause was City Ordinance 219–2(2), which *did* exist, but which the Iowa District Court *subsequently* held did not prohibit the conduct charged. The Iowa Supreme Court has expressly rejected reliance on a statute or ordinance that was subsequently held to be inapplicable, specifically, for unconstitutionality, because it would replace probable cause with "close enough is good enough." *Cline*, 617 N.W.2d at 290. It follows that City Ordinance 219–2(2), which was inapplicable *as properly construed* also cannot be relied upon to establish probable cause, because doing so would replace probable cause with "close enough is good enough." *Id.*

Moreover, as to the federal constitutional violation, I held that the subsequent determination that City Ordinance 219–2(2) was inapplicable was no more than a *Heien* mistake of law, but the Iowa Supreme Court has rejected the sufficiency of such a mistake

of law, even after *Heien*. *Tyler*, 830 N.W.2d at 294 (rejecting mistake of law as a basis for probable cause); *see also Scheffert*, 910 N.W.2d at 585 n.2 (recognizing that the decision in *Tyler* was unaffected by *Heien*); *Coleman*, 890 N.W.2d at 298 n.2 (same). Thus, because it is inapplicable as properly construed, City Ordinance 219–2(2) does not provide an alternative basis for probable cause under Iowa law to the non-existent City Ordinance E321I.10. In short, there was no probable cause for Baldwin's arrest under the Iowa constitutional standard.

### c.    Summary

Baldwin is entitled to summary judgment on his claim of a violation of article I, §§ 1 and 8 of the Iowa Constitution to the extent that he was arrested without probable cause under the Iowa constitutional standard.

### 3.    *"All due care" qualified immunity*

Because I conclude that there was a violation of the search and seizure provisions of the Iowa Constitution, I turn to the parties' arguments concerning summary judgment on the newly-adopted "all due care" qualified immunity defense to such a claim. The parties have starkly different views on whether the City is entitled to such qualified immunity.

### a.    Arguments of the parties

It is here, on summary judgment, rather than in resistance to leave to amend, that Baldwin's argument that no reasonable juror could find that the City's officers exercised "all due care" is more likely to be pertinent. Baldwin argues that the officers did not use "all due care" when they charged him with violation of a city ordinance that did not exist. In particular, he points out that I already concluded that the mistake resulted from a sloppy study of the laws that the officers were duty-bound to enforce and that I identified more authoritative resources that the officers could have consulted. In response, the City argues that the officers' reasonable reliance on a facially valid warrant means that there

is a jury question with respect to whether their challenged conduct breached a duty to exercise "all due care."

### b. Discussion

#### i. Who decides the defense and when?

The Iowa Supreme Court made clear in answering the certified question that, "[b]ecause the question is one of immunity, the burden of proof should be on the defendant." *Baldwin*, 915 N.W.2d at 280. The Iowa Supreme Court did not, however, make clear whether such immunity is ultimately a question for the court or for the jury to decide.

I conclude that, under appropriate circumstances—that is, in the absence of genuine issues of material fact—the question of "all due care" immunity can be decided by the trial court at summary judgment as a matter of federal law. *See, e.g., Cremona*, 433 F.3d at 620 (explaining that summary judgment is particularly appropriate when only questions of law are involved, rather than factual issues that may or may not be subject to genuine dispute). This is true, here, notwithstanding that the City did not cross-move for summary judgment on the newly-adopted "all due care" qualified immunity defense by reasserting its motion for summary judgment as to the new qualified immunity defense in its supplemental brief. No party to this case can be in any doubt that the key issue at this point in the litigation is the availability of the "all due care" qualified immunity defense to the City, and the parties have had a full and fair opportunity to marshal any pertinent evidence and arguments on that issue. *See Barkley, Inc. v. Gabriel Brothers, Inc.*, 829 F.3d 1030, 1041 (8th Cir. 2016) ("'Federal district courts have power to grant summary judgment *sua sponte* when the losing party is given sufficient advance notice and an adequate opportunity to submit evidence in opposition.'" (quoting *Chrysler Credit Corp. v. Cathey*, 977 F.2d 447, 449 (8th Cir. 1992) (per curiam), and also citing FED. R. CIV. P. 56(f)).

I assume, without deciding, that, in cases in which there *is* a genuine issue of material fact, such that summary judgment cannot be granted, the question of "all due care" qualified immunity remains one for the court. I note that, in other contexts, the Iowa Supreme Court has concluded that other kinds of qualified immunity are questions of law for the court. *See, e.g., Nelson v. Lindaman*, 867 N.W.2d 1, 7 (Iowa 2015) (explaining that IOWA CODE § 232.73, which provides immunity from civil liability for a physician participating in a child abuse assessment, "provides a form of qualified immunity," and that "'[q]ualified immunity is a question of law for the court and the issue may be decided by summary judgment'" (quoting *Dickerson v. Mertz*, 547 N.W.2d 208, 215 (Iowa 1996)); *Madden v. City of Eldridge*, 661 N.W.2d 134, 140 (Iowa 2003) (explaining that whether then IOWA CODE § 670.4(10), now § 670.4(1)(c), which provides for qualified immunity of municipalities from tort claims, "is applicable in the case before us is a question of law appropriate for determination by the trial court"). I see no suggestion in either the decision answering the certified question or elsewhere in Iowa case law that any form of qualified immunity, including "all due care" qualified immunity, is a question for the jury.

There is no doubt in this case, however, where there is no genuine issue of material fact as to the "all due care" qualified immunity defense, that I could decide that question at summary judgment. The Iowa Supreme Court may reach a different conclusion about who decides the question when presented with a case in which there are genuine issues of material fact on that question. The Iowa Supreme Court may adhere to the view of the Eighth Circuit Court of Appeals as to federal qualified immunity that, "although a jury is to decide predicate facts, the ultimate question of qualified immunity is one for the court." *Thompson v. King*, 730 F.3d 742, 750 (8th Cir. 2013) (citing *Littrell v. Franklin*, 388 F.3d 578, 584-85 (8th Cir. 2004)); *Luckert v. Dodge Cty.*, 684 F.3d 808, 817 (8th Cir. 2012) ("Qualified immunity is a legal question for the court, not the jury, to decide in the first instance, based either on the allegations or, if material facts are in

dispute, on the facts found by the jury." (citing *Littrell*, 388 F.3d at 584-85); *Littrell*, 388 F.3d at 584-85 (explaining "[t]he law of our circuit is clear . . . [that] qualified immunity is a question of law for the court, rather than the jury, to decide"). On the other hand, in a case in which there are genuine issues of material fact on the defense, the Iowa Supreme Court could also decide that "all due care" qualified immunity is a question exclusively for the jury. This is not such a case.

Therefore, in the absence of genuine issues of material fact, I conclude that I can decide the question of "all due care" qualified immunity at summary judgment.

### ii.    The "all due care" defense

What is at issue in this case are the precise contours of the newly-minted "all due care" qualified immunity defense and precisely what the relevant factors are in determining whether it is applicable. These are issues of first impression, because no court has so far applied the "all due care" qualified immunity defense to *any* specific factual circumstances. Nevertheless, my analysis of the Iowa Supreme Court's decision adopting the "all due care" qualified immunity defense does suggest some pertinent considerations.

First, in the course of answering the certified question, the Iowa Supreme Court stated that "the right to recover damages for a constitutional violation does not need to be congruent with the constitutional violation itself." *Baldwin*, 915 N.W.2d at 278. More specifically,

> Such an approach is not consistent with Iowa precedent or Restatement section 874A, and would result in too little play in the joints. Logically, the threshold of proof to *stop* an unconstitutional course of conduct ought to be less than the proof required to *recover damages* for it. Indeed, if a right of recovery for a constitutional tort existed whenever a constitutional violation occurred, it stands to reason that such recovery could not be subject to other limits, such as a statute of limitations.

*Baldwin*, 915 N.W.2d at 278-79. Thus, the determination, above, that Baldwin's rights under article I, §§ 1 and 8 of the Iowa Constitution were violated, does not necessarily mean that he is entitled to recover damages for that violation.

Next, the Iowa Supreme Court defined the defense as "all due care," but the City refers to it at times in its supplemental brief as "due care" or "ordinary care," equating it with a "negligence" standard. Equating "all due care" with a "negligence" standard appears to be appropriate. In answering the certified question, the Iowa Supreme Court explained, in part,

> We have decided not to follow any of these lines of authority [previously discussed] exactly. We believe instead that qualified immunity should be shaped by the historical Iowa common law as appreciated by our framers and the principles discussed in Restatement (Second) of Torts section 874A.
>
> *This means due care as the benchmark. Proof of negligence, i.e., lack of due care, was required for comparable claims at common law at the time of adoption of Iowa's Constitution. See Hetfield [v. Towsley]*, 3 Greene [584,] 585 [(Iowa 1852)]*; Howe [v. Mason]*, 12 Iowa [202,] 203–04 [(1861)]. *And it is still the basic tort standard today. See* Restatement (Second) of Torts § 874A (discussing reliance on analogous tort standards).

*Baldwin*, 915 N.W.2d at 280 (emphasis added). Indeed, the court emphasized, "Constitutional torts are torts, not generally strict liability cases." *Id*. at 281. The court also expressly did not address "the possibility that constitutional claims other than unlawful search and seizure may have a higher mens rea requirement, such as intent, embedded within the constitutional provision itself. In other words, it may take more than negligence just to violate the Iowa Constitution." *Id*. These statements reinforce the understanding of the "all due care" qualified immunity defense as embodying a "negligence" standard.

There is still more to be gleaned from the Iowa Supreme Court's decision answering the certified question. The defense is not based on "all due care," standing alone. Rather, the Iowa Supreme Court stated the defense in terms of proof that the defendant "exercised all due care *to conform to [or with] the requirements of the law*." *Id.* at 260-61 (with), 279 (to), 281 (to) (emphasis added). For example, it appears that, although "objective reasonableness" of the defendant's conduct is relevant to qualified immunity for a violation of the Iowa Constitution, just as it is relevant to qualified immunity for a violation of the United States Constitution, "exercising all due care to conform with the requirements of the law" imposes a greater burden on defendants than not violating "clearly established . . . constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818. The Iowa Supreme Court said as much, when it explained,

> As we have noted, a number of states allow *Harlow* immunity for direct constitutional claims. In those jurisdictions, there cannot be liability unless the defendant violated "clearly established ... constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738. *Harlow* examines objective reasonableness; thus, in some ways it resembles an immunity for officials who act with due care. *However, it is centered on, and in our view gives undue weight to, one factor: how clear the underlying constitutional law was.*

*Baldwin*, 915 N.W.2d at 279. The distinction appears to me to be between *taking reasonable action* to "conform" to the requirements of the law, under the Iowa "all due care" qualified immunity standard, and *avoiding action* one should reasonably know would violate the law, under the *Harlow* federal qualified immunity standard.

The Iowa Supreme Court also suggested that "all due care" encompasses some kind of "good faith." Notwithstanding that, as pointed out, above, the Iowa Supreme Court rejected a "good faith" exception to the exclusionary rule in *Cline*, 617 N.W.2d at

284-93, the court was aware of the potential impact of "good faith" on a damages action for a search or seizure that violated the Iowa Constitution:

> There is simply no meaningful remedy available to one who has suffered an illegal search other than prohibiting the State from benefiting from its constitutional violation. A civil remedy would probably be unsuccessful because the good faith that prevents exclusion would also preclude an action for damages.

*Cline*, 617 N.W.2d at 291. Thus, *Cline* suggests that, while "good faith" is irrelevant to the constitutional violation, it is relevant to the issue of damages. As the court explained in *Baldwin*, after quoting the passage, just above, "*Cline* is our law today: We have approved a comprehensive exclusionary rule cognizant of limits on damage actions." 915 N.W.2d at 278. Again, departing from the *Harlow* standard, the Iowa Supreme Court explained that, for purposes of an Iowa constitutional violation,

> Normally we think of due care or objective good faith as more nuanced [than how clear the underlying constitutional law was] and reflecting several considerations. *See, e.g., Hetfield*, 3 Greene at 585. Factual good faith may compensate for a legal error, and factual bad faith may override some lack of clarity in the law.

*Baldwin*, 915 N.W.2d at 279.

The "nuanced" "due care or objective good faith" in *Hetfield* arose from considerations that "'[t]he justice and constable, in what they did, were in the performance of official duty'" and that "'they acted in good faith.'" *See id.* at 276 (quoting *Hetfield*, 3 Greene at 585). The court had explained,

> Unless they exceeded their jurisdiction, or acted corruptly, or without authority of law, they are not liable. Although the justice might have acted erroneously, still he was not liable as a trespasser.

*Hetfield*, 3 Green at 585, *quoted in Baldwin*, 915 N.W.2d at 279. Similarly, the court in *Howe v. Mason* held that "[o]fficers required by law to exercise their judgment are not

answerable for mistakes in law or mere errors of judgment without any *fraud* or *malice.*" *Howe v. Mason*, 12 Iowa 202, 203-04 (1861), *quoted in Baldwin*, 915 N.W.2d at 279. Thus, while an error or mistake of law plainly will not negate a violation of article I, §§ 1 and 8 of the Iowa Constitution, *see Tyler*, 830 N.W.2d at 294; *accord Scheffert*, 910 N.W.2d at 585, it appears that, unless the error of law arose from a lack of due care—for example, if it exceeded jurisdiction or was without authority of law, *see Hetfield*, 3 Greene at 585—or was in bad faith—for example, if it was corrupt, fraudulent, or malicious, *see id.*; *Howe*, 12 Iowa 203-04—it *does* provide immunity from damages for such a violation.

I believe that there is yet more to be discerned from the decision answering the certified question about the nature of the "all due care" required for qualified immunity for an Iowa constitutional violation.  Looking to prior Iowa decisions allowing recovery for violations of the Iowa Constitution, the Iowa Supreme Court found that those cases demonstrated "bad faith conduct" or "malice and lack of probable cause." *Baldwin*, 915 N.W.2d at 275.  More specifically, the court characterized the situation in *McClurg v. Brenton*, 123 Iowa 368, 369-70, 372, 98 N.W. 881, 881-82 (1904), as involving "exceptional circumstances," consisting of "boisterous" invasion of a home and concerns—specifically, searching for beer—that exceeded the proper legal scope of the entry.  *Baldwin*, 915 N.W.2d at 275.  The court characterized the situation in *Krehbiel v. Henkle*, 142 Iowa 677, 678-79, 121 N.W. 378, 379 (1909), as involving "egregious misconduct," "malice and want of probable cause," and "a violation of [an Iowa constitutional] right *without reasonable ground therefor.*"  *Baldwin*, 915 N.W.2d at 275 (internal quotation marks omitted).  Thus, I believe that these cases confirm that "bad faith," "malice and lack of probable cause," and lack of "reasonable ground" for the conduct in question are factors suggesting that the "all due care" qualified immunity defense is inapplicable.

### iii. *"All due care" of the officers*

Because I do not have the guidance of any Iowa court in the application of the "all due care" qualified immunity defense, I necessarily have doubts that my determination of whether that defense is applicable to the City in this case will be consistent with the Iowa Supreme Court's conception of the defense and the factors that court considers relevant to application of the defense in any specific circumstances. Thus, in the absence of further guidance, part of the analysis to follow is a close question, and part of it is not.

I begin with the officers' reliance on a non-existent ordinance as the basis for probable cause to arrest Baldwin. I have relatively little doubt that such conduct was *not* the result of the exercise of "all due care to conform to the requirements of the law." As I explained, in my prior ruling on cross-motions for summary judgment, with regard to qualified immunity to Baldwin's federal constitutional claim, reliance on a non-existent warrant was not a mistake of law that even federal constitutional law would excuse, because it was the result of a sloppy study of the laws the officers were duty-bound to enforce and, as such, was plainly incompetent. *See Baldwin*, 218 F. Supp. 3d at 1002 (citing *Heien*, 135 S. Ct. at 539-40; *New v. Denver*, 787 F.3d 895, 899 (8th Cir. 2015)); *and compare Tyler*, 830 N.W.2d at 294 (holding that a mistake of law is not an exception to probable cause); *see also Scheffert*, 910 N.W.2d at 585 n.2 (recognizing that the decision in *Tyler* was unaffected by *Heien*); *Coleman*, 890 N.W.2d at 298 n.2 (same). Nothing in the adoption of the "all due care" qualified immunity defense by the Iowa Supreme Court in answering the certified question suggests that incompetence of this sort is anything but the sort of "negligence" and departure from "objectively reasonable" conduct that provides no qualified immunity to an Iowa constitutional tort.

To put the determination squarely in terms of the Iowa "all due care" qualified immunity defense as adopted and the requirements of the precedents from which that defense was derived, this mistake resulted from a failure to exercise due care to conform to the requirements of the law, that is, to *take reasonable action* to comply with the law,

not merely to *avoid action* that one should reasonably know would violate the law. *See, supra*, page 38. This mistake was one that the Iowa Supreme Court would likely conclude deprived the officers of any legal authority for the arrest, *see Hetfield*, 3 Green at 585, and that their failure to discover it was not a matter of good faith that would compensate for the error. *Baldwin*, 915 N.W.2d at 279. Indeed, the officers' failure to discover the error might amount to the sort of bad faith that does not override some lack of clarity in the law. *See id.* As I pointed out in my ruling on cross-motions for summary judgment, the officers "had more authoritative resources available to them than each other or other officers or some *Handbook* that purportedly summarized the applicable law statewide, but did not purport to interpret the City's Ordinances, to clarify that 321I was a distinct chapter of the Iowa Code from 321." *Baldwin*, 218 F. Supp. 3d at 999. At a minimum, reliance on a non-existent ordinance in this case does not seem to be action on any "reasonable ground." *Krehbiel*, 142 Iowa at 678-79, 121 N.W. at 379, *quoted in Baldwin*, 915 N.W.2d at 275. It appears likely to me that reliance on a non-existent ordinance did not involve the exercise of "all due care" as a matter of law, and that Baldwin would be entitled to summary judgment on the "all due care" qualified immunity defense, if a mistake as to the existence of the ordinance the officers relied upon were all that the defense is based on.

On the other hand, it is possible that the "all due care" qualified immunity defense is properly applicable to the officers' mistake of law in this case about the existence of Ordinance E321I.10. For example, the officers' mistake may be more akin to the mistake of the justice of the peace and the constable in *Hetfield* in taking away the plaintiff's oxen. The officers, in what they did, were in the performance of their official duties as Estherville police officers. Therefore, unless they exceeded their jurisdiction, or acted corruptly, or without authority of law, they would not be liable. Although the officers might have acted erroneously, still they may not be liable for an unconstitutional search and seizure under the Iowa Constitution. Baldwin, like the plaintiff in *Hetfield*, had his

remedy when the Iowa District Court dismissed the charge against him. Furthermore, Baldwin admits that the officers were acting in the scope of their employment, and he has not pointed to evidence that demonstrates "bad faith," while they have pleaded that they acted in good faith in the performance of their duties. *See Baldwin*, 915 N.W.2d at 276 (citing *Hetfield*, 3 Greene at 584-85).

The erroneous reliance on a non-existent ordinance is not the only issue in the application of the "all due care" qualified immunity defense or, indeed, the factor on which the City focuses. Rather, the City argues that the officers' reasonable reliance on a facially valid warrant means that there is a jury question with respect to whether their challenged conduct breached a duty to exercise "all due care." In my ruling on cross-motions for summary judgment, I concluded that the officers' reliance on a warrant issued on the basis of an alleged violation of City Ordinance E321I.10, which did not exist, was not a basis for qualified immunity to Baldwin's federal constitutional claim, because no reasonably competent officer would have concluded that such a warrant should issue. *Baldwin*, 218 F. Supp. 3d at 1003. The officers' error in reliance on the warrant was exactly the same as their mistake in citing Baldwin for a violation of a non-existent ordinance, in the first place: it was the result of a sloppy study of the laws the officers were duty-bound to enforce. Because of that, on an objective basis, I concluded that it was obvious that no reasonably competent officer would have concluded that a warrant should issue based on an alleged violation of an ordinance that did not exist. *Id.* (quotation marks and citations omitted). If anything, the lack of immunity to an Iowa constitutional claim on this basis appears to me to be even more obvious, because, again, this mistake resulted from a failure to exercise due care to conform to the requirements of the law, that is, to *take reasonable action* to comply with the law, not merely to *avoid action* that one should reasonably know would violate the law. *See, supra*, page 38. Likewise, had the officers done their minimum homework and informed the neutral

magistrate that no such ordinance existed, no magistrate could have reasonably issued the warrant based on the then available information in position of the officers.

Nevertheless, it is possible that the Iowa Supreme Court could conclude that the "all due care" qualified immunity defense is properly applicable to the officers' reliance on a warrant for Baldwin's arrest for violating an ordinance that did not exist. The officers might have taken the magistrate's issuance of a warrant as settling any doubts about the validity of the ordinance and about the existence of probable cause that the ordinance was violated by Baldwin's conduct. *See, e.g., Williams v. City of Alexander, Ark.*, 772 F.3d 1307, 1311 (8th Cir. 2014) ("The fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner." (Internal quotation marks and citations omitted)). One reason that the Iowa Supreme Court rejected reliance on a warrant as establishing an exception to the exclusionary rule was that "[c]ommon sense tells us that the exclusionary rule prompts more care and attention at all stages of the warrant-issuing process, including by the judicial officers issuing the warrant." *Cline*, 617 N.W.2d at 290. Holding the City (or the officers, if they were defendants on the Iowa constitutional claims) liable for damages for the judicial officer's error in issuing a warrant based on a non-existent ordinance would not serve that broader deterrent purpose of prompting more care and attention by judicial officers issuing warrants, but would place the consequences of the failure on the police officers, who did not have the last say in the matter, or their employer.

I also believe that it is likely that "all due care" qualified immunity is not available based on the issue of whether a reasonably competent officer would have concluded that a warrant should issue *based on Baldwin's conduct known to the officers*, *i.e.*, on an *alternative basis* for probable cause. In my prior ruling, as to qualified immunity to the federal constitutional clam, I concluded that it was not clearly established that Baldwin's conduct—operating his ATV in a ditch that was publicly-owned property—did not violate City Ordinance 219–2(2) prior to the Iowa District Court's interpretation of that

Ordinance. *Baldwin*, 218 F. Supp. 3d at 1003. Thus, I concluded that the defendants had qualified immunity to Baldwin's federal constitutional claim. *Id*. This conclusion was in addition or in the alternative to my prior conclusion that the defendants did not violate Baldwin's federal constitutional rights, because his arrest was based on probable cause under the federal standard. *Id.*; *see also id*. at 1001.

Nevertheless, it may be that the Iowa Supreme Court would hold that the City is entitled to "all due care" qualified immunity to Baldwin's Iowa constitutional claim on the basis of an alternative probable cause analysis. Again, Iowa recognizes that "the State is *not* limited to the reasons stated by the investigating officer in determining whether either probable cause or reasonable suspicion existed for the stop [or arrest]." *Tyler*, 830 N.W.2d at 295 (citing *State v. Heminover*, 619 N.W.2d 353, 357 (2000)); *Cline*, 617 N.W.2d at 281. Although I concluded that City Ordinance 219–2(2) *did not* establish probable cause under the Iowa standard, and that Baldwin's rights under the Iowa Constitution were violated, that conclusion would be no bar to application of "all due care" qualified immunity, because the Iowa Supreme Court recognized that "the right to recover damages for a constitutional violation does not need to be congruent with the constitutional violation itself." *Baldwin*, 915 N.W.2d at 278.

Also, while a reasonable mistake of law does not establish probable cause, so that there was a violation of Baldwin's right to be free from an unreasonable search and seizure provided by article I, §§ 1 and 8 of the Iowa Constitution, in contrast, as I explained, above, it appears that mere mistakes of law *can be* the basis for "all due care" qualified immunity. *See Baldwin*, 915 N.W.2d at 279 (citing *Hetfield*, 3 Greene at 585; *Howe*, 12 Iowa at 203-04). It also appears that, to the extent that the Iowa District Court's *subsequent* interpretation that City Ordinance 219–2(2) did not prohibit driving an ATV in a ditch of a city street, a mistake about the prohibitions of that Ordinance was not corrupt, fraudulent, or malicious. *Id*. The officers were acting in the performance of official duties, and City Ordinance 219–2(2) would reasonably have appeared to

provide legal authority for Baldwin's arrest. *Id.* at 276, 279. Unlike the mistake about whether City Ordinance E321I.10 even existed, which was plainly incompetent, it is not clear what reasonable efforts, short of obtaining a judicial construction, the officers could have made to determine that City Ordinance 219–2(2) did not prohibit Baldwin from riding in the ditch. No advisory judicial construction could be obtained, however, and I doubt even recourse to the City Attorney would have led the defendants to the conclusion that the construction subsequently made by the Iowa District Court was the only reasonable construction of City Ordinance 219–2(2). In these circumstances, it may be inappropriate to make the City "answerable for mistakes in law" with an award of damages. *Howe*, 12 Iowa at 203-04.

On the other hand, it is possible that the "all due care" qualified immunity defense is not applicable, on the basis of an alternative probable cause analysis. Indeed, it is possible that an alternative probable cause analysis is simply irrelevant to the question of "all due care" qualified immunity, because the defense examines whether the officers' exercised "all due care to conform to the law," not whether there *happens* to be *some* law, even one the officers did not rely on, that might have provided legal justification for their actions.

### c.     *Summary*

Notwithstanding that there was a violation of Baldwin's right to be free from unreasonable search and seizure provided by article I, §§ 1 and 8 of the Iowa Constitution, I believe that it is possible that the City has "all due care" qualified immunity to liability for damages for that violation. Because this is an issue of first impression, however, not just for this court, but for *any* court applying Iowa constitutional law, I believe it is more appropriate to obtain a more authoritative answer, if one can be had from the Iowa Supreme Court.

## IV.    CERTIFICATION OF ADDITIONAL QUESTIONS

At several points in this opinion, I have indicated that novel questions of Iowa law were presented and that only the Iowa Supreme Court could provide authoritative answers.  In his supplemental brief, Baldwin seeks answers to two further questions of first impression under Iowa law that I have not yet reached.  Therefore, I will consider, *sua sponte*, whether these questions should be certified to the Iowa Supreme Court.  I begin with the standards for certification of questions to the highest state court.

### A.    Standards For Certification

Certification of questions by this federal court to the Iowa Supreme Court is authorized by IOWA CODE § 684A.1 and N.D. IA. L.R. 83.  As the Iowa Supreme Court has explained,

> "Iowa Code section 684A.1 allows this court to answer questions of Iowa law certified to us by a federal court that concludes controlling precedent is lacking when the answer may be determinative of the federal proceeding." *Oyens Feed & Supply, Inc. v. Primebank*, 808 N.W.2d 186, 188 (Iowa 2011). In *Foley [v. Argosy Gaming Co.*, 688 N.W.2d 244, 246 (Iowa 2004)]*, we noted our discretion to answer certified questions that (1) were certified by a proper court, (2) presented questions of Iowa law, (3) "may be determinative of the cause … pending in the certifying court," and (4) appeared to the certifying court to have no controlling Iowa precedent. 688 N.W.2d at 246 (quoting Iowa Code § 684A.1 (2003)).

*Board of Water Works Trustees of City of Des Moines v. Sac Cnty. Bd. of Supervisors*, 890 N.W.2d 50, 56 (Iowa 2017).

In a case in which I likewise certified questions *sua sponte*, I identified the reasons that a district court may certify questions to a state's highest court and the district court's discretion to do so:

As the United States Supreme Court has recognized,

> Certification procedure … allows a federal court faced with a novel state-law question to put the question directly to the State's highest court, reducing the delay, cutting the cost, and increasing the assurance of gaining an authoritative response.

> *Arizonans for Official English v. Arizona*, 520 U.S. 43, 76, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997); *see Lehman Bros. v. Schein*, 416 U.S. 386, 391, 94 S.Ct. 1741, 40 L.Ed.2d 215 (1974) (by certifying a question of state law, the federal court may save "time, energy and resources and hel[p] build a cooperative judicial federalism"). Thus, "[t]aking advantage of certification made available by a State may 'greatly simplif[y]' an ultimate adjudication in federal court." *Arizonans for Official English*, 520 U.S. at 76, 117 S.Ct. 1055 (citing *Bellotti v. Baird*, 428 U.S. 132, 151, 96 S.Ct. 2857, 49 L.Ed.2d 844 (1976)). Whether a federal district court should certify a question of state law to the state's highest court is a matter committed to the district court's discretion. *Schein*, 416 U.S. at 391, 94 S.Ct. 1741 ("[Certification's] use in a given case rests in the sound discretion of the federal court."); *Babinski v. American Family Ins. Group*, 569 F.3d 349, 353 (8th Cir.2009) ("'Whether a federal court should certify a question to a state court is a matter of discretion.'" (quoting *Johnson v. John Deere Co.*, 935 F.2d 151, 153 (8th Cir.1991)).

*Roth v. The Evangelical Lutheran Good Samaritan Soc'y*, 147 F. Supp. 3d 806, 813 (N.D. Iowa 2015). As the Eighth Circuit Court of Appeals has cautioned, however, "'[A]bsent a close question of state law or a lack of state guidance, a federal court should determine all the issues before it.'" *County of Ramsey v. MERSCORP Holdings, Inc.*, 776 F.3d 947, 951 (8th Cir. 2014) (quoting *Anderson v. Hess Corp.*, 649 F.3d 891, 895 (8th Cir. 2011)).

I also set forth the pertinent factors in deciding whether or not to certify questions in *Hagen v. Siouxland Obstetrics & Gynecology, P.C.*, 964 F. Supp. 2d 951, 961 (N.D. Iowa 2013), and *Leiberkneckt v. Bridgestone/Firestone, Inc.*, 980 F. Supp. 300, 310 (N.D. Iowa 1997). *See Roth*, 147 F. Supp. 3d at 814 (citing *Hagen*, which in turn cites *Leiberkneckt*). Those factors are the following: 1) the extent to which the legal issue under consideration has been left unsettled by the state courts; (2) the availability of legal resources which would aid the court in coming to a conclusion on the legal issue; (3) the court's familiarity with the pertinent state law; (4) the time demands on the court's docket and the docket of the state supreme court; (5) the frequency that the legal issue in question is likely to recur; and (6) the age of the current litigation and the possible prejudice to the litigants which may result from certification. *Hagen*, 964 F. Supp. 2d at 961 (quoting *Leiberkneckt*, 980 F. Supp. at 310).

## B. Questions Of First Impression

### 1. Questions already identified

The questions on which I indicated, above, that I believe an authoritative answer by the Iowa Supreme Court will be determinative in this case include the following:

> 1. Can the City assert qualified immunity to a claim for damages for violation of the Iowa Constitution based on its officers' exercise of "all due care"?
>
> 2. If the City can assert such a defense, on the facts presented in this case, does the City have "all due care" qualified immunity to liability for damages for the violation of Baldwin's right to be free from an unreasonable search and seizure under article I of the Iowa Constitution? This question necessarily includes questions about the extent to which reliance on a warrant may satisfy the "all due care" standard and whether the "all due care" analysis considers alternative bases for probable cause or a warrant on which the officers did not rely.

## 2.    *Additional questions*

I turn, next, to additional questions of first impression raised in Baldwin's supplemental briefing. First, Baldwin seeks summary judgment that the defendants acted in reckless disregard of his rights under article I of the Iowa Constitution, as a gateway to a jury award of punitive damages. He argues that, notwithstanding that IOWA CODE § 670.4(1)(e) bars claims for punitive damages against a municipality, the Iowa Supreme Court has affirmed the award of punitive damages for a case based on a defendant's "wanton and reckless" disregard of the plaintiff's Iowa constitutional rights in *Krehbiel v. Henkle*, 129 N.W. 945 (1911), and that the issue was raised in the dissent to the Iowa Supreme Court's opinion answering the first certified question in this case and in the concurrence in *Godfrey*. Baldwin contends that, more generally, under IOWA CODE § 668A.1(1)(a) and applicable case law, "reckless disregard of the rights of another" is sufficient to award punitive damages. He then argues that the officers acted with "reckless disregard" in arresting him. In response, the City argues that IOWA CODE § 670.4(1)(e) bars punitive damages claims against municipalities and that there is no Iowa case that holds to the contrary.

I am not in a position to decide whether the Iowa Supreme Court's recognition of a claim for damages for a violation of the Iowa Constitution, as established in *Godfrey*, is better served by (1) maintaining the bar on punitive damages against a municipality pursuant to IOWA CODE § 670.4(1)(e) for Iowa constitutional violations, or (2) lifting that bar and either (a) reaffirming the standard for punitive damages that is otherwise applicable, or (b) adopting some different standard for punitive damages against a municipality for an Iowa constitutional violation by its officers or employees. That is a question for the Iowa Supreme Court in its role in crafting a remedy for a claim for damages for such a violation. *Baldwin*, 915 N.W.2d at 276. Thus, the third and fourth questions on which I believe that an authoritative answer by the Iowa Supreme Court will be determinative in this case are the following:

3.    If punitive damages are an available remedy against an individual defendant for a violation of a plaintiff's rights under the Iowa Constitution, can punitive damages be awarded against a municipality that employed the individual defendant and, if so, under what standard?

4.    If punitive damages are available in answer to the previous question, would a reasonable jury be able to find that the applicable standard was met on the facts presented in this case?

In his supplemental brief, Baldwin also seeks a determination that he is entitled to attorney's fees.  He argues that his claim for violation of his right to be free from an unreasonable search and seizure under article I, § 8 of the Iowa Constitution has already achieved significant benefit, specifically, a departure from the federal qualified immunity standard for such claims.  He asserts that he is a prevailing party as a catalyst to a change in Iowa law.  He might now add that he has prevailed on his Iowa constitutional claim to the extent that I found a violation of his rights under the Iowa Constitution, notwithstanding that I have not resolved the question of the City's "all due care" qualified immunity to that claim.  He argues that, if attorney's fees are not awarded for violation of Iowa constitutional rights, it will leave a gaping hole in available remedies.  The City argues that there is no authorization for punitive damages for a violation of the Iowa Constitution under state law, so Baldwin's opportunity to recover attorney's fees disappeared with his federal claims.

Again, I am not in a position to decide whether the Iowa Supreme Court's recognition of a claim for damages for a violation of the Iowa Constitution, as established in *Godfrey*, is better served by allowing or prohibiting an award of attorney's fees for some degree of success on such a claim.  That is a question for the Iowa Supreme Court in its role in crafting a remedy for a claim for damages for such a violation.  *Baldwin*, 915 N.W.2d at 276.  It is possible that the Iowa Supreme Court would apply Iowa Civil Rights Act (ICRA) standards to the question of whether to award attorney fees, but that

court may depart from the ICRA standards in performing its role in crafting a remedy for a claim for damages for a violation of the Iowa Constitution as established in *Godfrey*. Thus, the fifth question on which I believe that an authoritative answer by the Iowa Supreme Court will be determinative in this case is the following:

> 5.      If an award of attorney's fees would have been available against an individual defendant for a plaintiff who attains some degree of success on a claim of a violation of a plaintiff's rights under the Iowa Constitution, would they be available against a municipality that employed the individual defendant and, if so, under what standard?

### C.      Application Of The Certification Standards

I now conclude that each of these questions meets the Iowa Supreme Court's standards for certified questions. Each question (1) is a question of Iowa law, (2) may be determinative of Baldwin's case, which is pending in this court, and (3) appears to me to be one for which there is no controlling Iowa precedent. *Board of Water Works Trustees of City of Des Moines*, 890 N.W.2d at 56. As to the factors I identified in *Hagen* and *Leiberkneckt*, as explained, above, these questions have been left unsettled by the Iowa Supreme Court in either the opinion answering the prior certified question, the precedents on which that decision was based, or in *Godfrey*, which recognized the cause of action. *Leiberkneckt*, 980 F. Supp. at 310 (relevant factors). This court may have the same legal resources available as the Iowa state courts, substantial familiarity with the pertinent Iowa law, so far as it has already been articulated, and no greater demand on its docket than the Iowa Supreme Court, *see id.*, but only the Iowa Supreme Court can provide an authoritative answer to the questions. *Arizonans for Official English*, 520 U.S. at 76 (explaining that certification of questions "increase[es] the assurance of gaining an authoritative response"). The questions at issue are not only ones of first impression, but ones that are likely to recur, now that the Iowa Supreme Court has

recognized both a private cause of action for damages for violation of Iowa constitutional rights and an "all due care" qualified immunity defense to such claims. *Leiberkneckt*, 980 F. Supp. at 310.

Finally, I am aware that this trial has been reset for January 2019 and that the parties did not anticipate further discovery or other proceedings before trial. Thus, it is likely that certification of these questions will result in some delay in the disposition of this case *at the trial level*. On the other hand, because this case would otherwise proceed to trial and then appeal to the Eighth Circuit Court of Appeals, the resources of the parties are likely to be saved by obtaining a *definitive* and *authoritative* answer to these questions from the Iowa Supreme Court, which will greatly simplify this litigation. *See Arizonans for Official English*, 520 U.S. at 76 (explaining that certification may also "reduc[e] the delay [and] cut[ ] the cost" to the parties and "may 'greatly simplif[y]' an ultimate adjudication in federal court."). I do not believe that, in light of the benefits of a definitive and authoritative answer to these questions, the possibility of a delay in the disposition of the case at the trial level will unduly prejudice the parties.

Therefore, I will certify the questions of first impression identified, above, in some form, to the Iowa Supreme Court.

### D. Opportunity To Refine Or Add To The Questions To Be Certified

I believe that it is prudent to provide the parties with the opportunity to offer amendments to the questions I propose or to offer different and additional questions that will lead to the authoritative and efficient disposition of Baldwin's Iowa constitutional claims. Consequently, I will set a deadline for the parties to offer amendments to these questions or to offer different and additional questions to be certified.

## V.     CONCLUSION

Upon the foregoing,

1.     The City's July 12, 2018, Motion For Leave To Amend Answer (docket no. 60) is **granted**. The City shall file a clean version of its Amended Answer.

2.     The remaining portion of plaintiff Baldwin's August 11, 2016, Motion For Partial Summary Judgment (docket no. 27), as supplemented, seeking summary judgment in his favor on Counts I and III of his petition asserting a claim for damages for a violation of his rights under article I of the Iowa Constitution, is **granted in part and reserved in part**, as follows:

      a.     The part of the Motion, as supplemented, seeking summary judgment that Baldwin's rights under article I of the Iowa Constitution were violated is **granted**, but

      b.     The parts of the Motion and supplemental briefing seeking summary judgment or determinations that

          (i) the City is not entitled to "all due care" qualified immunity for that violation of the Iowa Constitution,

          (ii) the defendants acted in reckless disregard of his rights under article I of the Iowa Constitution, as a gateway to a jury award of punitive damages, and

          (iii) he is entitled to attorney's fees,

are **reserved**, pending answers to the questions to be certified to the Iowa Supreme Court.

3.     The City's August 11, 2012, Second Motion For Summary Judgment (docket no. 52) is **denied as moot**.

4.     The parties shall have **to and including September 24, 2018,** to offer amendments to the questions I propose or to offer different and additional questions that will lead to the authoritative and efficient disposition of Baldwin's Iowa constitutional claims.

**IT IS SO ORDERED**.

**DATED** this 14th day of September, 2018.

MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA