**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | |
|---|---|
| GREGORY BALDWIN,<br><br>Plaintiff,<br>vs.<br><br>ESTHERVILLE, IOWA,<br><br>Defendant. | No. C 15-3168-MWB<br><br>**OPINION AND ORDER CERTIFYING QUESTIONS TO THE IOWA SUPREME COURT** |

_____

**TABLE OF CONTENTS**

*I.   INTRODUCTION……………………………………………………………2*

*II.  LEGAL ANALYSIS ……………………………………………………… 4*
    *A.   Baldwin's Proposals……………………………………………… 4*
        *1.   The question regarding independence of claims ………………5*
        *2.   The question regarding who decides "all due care"
            immunity ……………………………………………………… 9*
    *B.   The City's Proposals …………………………………………… 12*
        *1.   The question regarding application of the punitive
            damages standard ……………………………………………… 13*
        *2.   The question regarding retroactive availability of
            punitive damages or attorney's fees……………………… 14*

*III. CONCLUSION …………………………………………………………… 16*

This case arises from plaintiff Gregory Baldwin's arrest by police officers of defendant City of Estherville, Iowa, for riding his ATV on and in a ditch beside a street in the City, allegedly in violation of a state statute that the officers believed had been, but

1

was not, incorporated into the City's Code of Ordinances. Although I granted summary judgment for the City and the individual police officers on Baldwin's claim of violation of the Fourth Amendment to the United States Constitution and his claim of false arrest, I reserved ruling on his claims against the City for violations of the Iowa Constitution.[1] I certified to the Iowa Supreme Court the question of whether a defendant can raise a defense of qualified immunity to an individual's claim for damages for violation of article I, §§ 1 and 8 of the Iowa Constitution. The Iowa Supreme Court answered that question in the affirmative and adopted an "all due care" qualified immunity defense. In an Opinion And Order, filed September 14, 2018, *see Baldwin v. Estherville, Iowa*, ___ F. Supp. 3d ___, 2018 WL 4567326 (N.D. Iowa Sept. 14, 2018), I concluded, *inter alia*, that several additional questions should be certified to the Iowa Supreme Court. That Opinion And Order is incorporated in full by reference. At my invitation, the parties have now proposed certain additions and deletions to those questions.

## I.   INTRODUCTION

The factual background to this case is set out in considerable detail in my prior ruling on cross-motions for summary judgment, *see Baldwin v. Estherville, Iowa*, 218 F. Supp. 3d 987, 989-93 (N.D. Iowa 2016), then by the Iowa Supreme Court in *Baldwin v. City of Estherville*, 915 N.W.2d 259, 261-65 (Iowa 2018), and briefly reprised in my September 14, 2018, Opinion And Order, *Baldwin*, 2018 WL 4567326, at *1-*2. Similarly, some of the procedural background is set out in more detail in my ruling on cross-motions for summary judgment, *see Baldwin*, 218 F. Supp. 2d at 993-95, and in my September 14, 2018, Opinion And Order, *Baldwin*, 2018 WL 4567326, at *2-*4. Those statements are incorporated by reference into this Opinion And Order.

---

[1] The City was the only defendant on Baldwin's Iowa constitutional claims.

In the September 14, 2018, Opinion And Order, I granted the City's July 12, 2018, Motion For Leave To Amend Answer to assert the newly-minted "all due care" qualified immunity defense to Baldwin's Iowa constitutional claims. I also denied as moot the City's August 11, 2012, Second Motion For Summary Judgment. I granted in part Baldwin's August 11, 2016, Motion For Partial Summary Judgment, as supplemented, but I also reserved ruling on parts of that Motion. Specifically, I granted the part of that Motion seeking summary judgment in Baldwin's favor on Counts I and III of his petition to the extent that I concluded that his rights under article I of the Iowa Constitution were violated, but I reserved ruling on that part of his Motion, as supplemented, seeking summary judgment or determinations as to the following matters: (1) that the City is not entitled to "all due care" qualified immunity for that violation of the Iowa Constitution, (2) that the defendants acted in reckless disregard of his rights under article I of the Iowa Constitution, as a gateway to a jury award of punitive damages, and (3) that Baldwin is entitled to attorney's fees. *Baldwin*, 2018 WL 4567326, at *27.

For reasons set out in some detail in the September 14, 2018, Opinion And Order, I also tentatively formulated the following questions as ones on which I believe an authoritative answer by the Iowa Supreme Court will be determinative in this case:

> 1. Can the City assert qualified immunity to a claim for damages for violation of the Iowa Constitution based on its officers' exercise of "all due care"?
>
> 2. If the City can assert such a defense, on the facts presented in this case, does the City have "all due care" qualified immunity to liability for damages for the violation of Baldwin's right to be free from an unreasonable search and seizure under article I of the Iowa Constitution? This question necessarily includes questions about the extent to which reliance on a warrant may satisfy the "all due care" standard and whether the "all due care" analysis considers alternative bases for probable cause or a warrant on which the officers did not rely.

> 3. If punitive damages are an available remedy against an individual defendant for a violation of a plaintiff's rights under the Iowa Constitution, can punitive damages be awarded against a municipality that employed the individual defendant and, if so, under what standard?
>
> 4. If punitive damages are available in answer to the previous question, would a reasonable jury be able to find that the applicable standard was met on the facts presented in this case?
>
> 5. If an award of attorney's fees would have been available against an individual defendant for a plaintiff who attains some degree of success on a claim of a violation of a plaintiff's rights under the Iowa Constitution, would they be available against a municipality that employed the individual defendant and, if so, under what standard?

*Baldwin*, 2018 WL 4567326, at *25-*26.

On September 24, 2018, the parties responded to my invitation to offer amendments to the questions I proposed or to offer different and additional questions that would lead to the authoritative and efficient disposition of Baldwin's Iowa constitutional claims. *Id*. at *27. In his response, Baldwin proffers two additional questions. In its response, the City suggests that Proposed Question No. 4, above, should not be certified, and proposes one additional question. Thus, I turn to consideration of the parties' proposed additions and deletions to the questions to be certified to the Iowa Supreme Court.

## II. LEGAL ANALYSIS
### A. *Baldwin's Proposals*

I will consider, in turn, the two additional questions that Baldwin asserts I should certify to the Iowa Supreme Court.

4

### *1.  The question regarding independence of claims*

The first question that Baldwin asks that I add is the following:

> Are claims brought under article I, section 1 independent claims, or "mere appendages" to other article I claims, such as claims for relief under article I, section 8?

Baldwin notes that, in the September 14, 2018, Opinion And Order, I concluded that he was asserting a single claim for violation of the Iowa Constitution, notwithstanding that he had pleaded Iowa constitutional violations in two separate counts based on two sections of article I to the Iowa Constitution. Specifically, I explained:

> I reach this conclusion based on Baldwin's arguments in his original summary judgment motion and in his supplemental brief. Baldwin asserts in both that, by analogy to equal protection law under the Iowa Constitution, which the Iowa Supreme Court held "arises out of the confluence of article I, section 1 and article I, section 6," *McQuistion v. City of Clinton*, 872 N.W.2d 817, 830 n.6 (Iowa 2015), search and seizure law under the Iowa Constitution arises out of the "confluence" of article I, § 1 and article I, § 8, where article I, § 1 protects individuals' rights, while article I, § 8, prevents the government from engaging in unreasonable searches and seizures. Thus, Baldwin appears to assert only one violation of the Iowa Constitution, based on this "confluence" of the two sections. Indeed, in his now reanimated Motion For Partial Summary Judgment, he argues that "the Defendants, acting under color of state law, arrested and jailed [him] without probable cause in violation of his article I, section 8, [and] article I, section 1 . . . rights." Similarly, in his supplemental brief, based on a single discussion of whether there was probable cause, he argues, "Concerning whether [his] article I rights were violated, there is no genuine issue of material fact, and [he] is entitled to judgment as a matter of law."
>
> Thus, there is only one Iowa constitutional claim at issue, based on a lack of probable cause for Baldwin's arrest,

5

> in violation of Baldwin's right to be free of an unreasonable search and seizure, even though that single claim is based on two provisions of the Iowa Constitution and was pleaded in two counts.

*Baldwin*, 2018 WL 45467326, at *11-*12.

Baldwin does not dispute any of my statements quoted just above. Nevertheless, he points out that, in a dissent to the Iowa Supreme Court's decision answering the original certified question in this case, Justice Appel stated the following:

> The importance of claims brought under article I, section 1 of the Iowa Constitution cannot be rendered a mere appendage either. Article I, section 1 was purposefully placed at the beginning of the Bill of Rights. *See* 1 *The Debates of the Constitutional Convention of the State of Iowa* 103–04 (W. Blair Lord rep. 1857), [hereinafter *The Debates*], http://www.statelibraryofiowa.org/services/collections/law-library/iaconst. It makes the point of emphasizing "inalienable rights," which, I take it, includes rights that cannot be abrogated by the legislature, or this court. Further, the "free and equal" provision of article I, section 1 is at the heart of our government structure and provided the constitutional foundation to *Coger v. Northwestern Union Packet Co.*, an important and highly celebrated case prohibiting discrimination by a steamboat operator against a female passenger "partly of African descent." 37 Iowa 145, 147, 153–55 (1873). Like article I, section 8, this constitutional provision is not the place to cut remedial corners. Indeed, it is an area requiring exceptional remedial vigilance.

*Baldwin*, 915 N.W.2d at 285 (Iowa 2018) (Appel, J., dissenting). Baldwin argues that his article I, section 1 claim is independent of, and not a mere "appendage" to, his article I, § 8 claim, because article I, § 1 uses clearer and more powerful language concerning individual rights than any provision after it in the Iowa Bill of Rights and, he contends, "outshines" any protection in the Federal Bill of Rights. He asserts that, while article I,

§ 8 should be read in context with article I, § 1, as a reason supporting greater protections under article I, § 8, article I, § 8 does not subsume article I, § 1. He represents that he is drafting jury instructions on separate and distinct claims under the two sections of article I. For this reason, he proffers his additional question about whether article I, § 1 and article I, § 8 support independent claims.

It is clear to me that, prior to Judge Appel's dissent, Baldwin did not fully consider—or if he did, he never articulated to this court—whether he had separate claims under the two sections of article I on which he relied. Rather, as I explained in my September 14, 2018, Opinion And Order, Baldwin clearly relied on a "confluence" of §§ 1 and 8 as the legal basis for an Iowa constitutional search and seizure claim and the lack of probable cause as the factual basis for that claim, by analogy to equal protection law under the Iowa Constitution, which the Iowa Supreme Court held "'arises out of the confluence of article I, section 1 and article I, section 6.'" *Baldwin*, 2018 WL 4567326, at *11 (quoting *McQuistion v. City of Clinton*, 872 N.W.2d 817, 830 n.6 (Iowa 2015)). Baldwin still has not coherently articulated either the legal or the factual distinctions between the claims, if each section sustains an independent claim,[2] nor has he argued that, if the undisputed factual circumstances presented, here, could violate both sections independently, that a violation of one section would permit different or additional damages compared to those available for a violation of the other section. Finally, he has not framed his argument for certification of this question in terms of the standards for

---

[2] Baldwin pleaded his claim of a violation of article I, § 1 of the Iowa Constitution in Count III of his Petition to be that the City, through its officers, acting within the scope of their employment, violated his rights "when the officers took him into custody without a criminal offense having been committed." Surely, Baldwin is not contending that article I, § 1 of the Iowa Constitution requires that a person *actually be guilty of a crime* before he can even be arrested! If that were so, either a trial would have to *precede* the arrest, or every acquittal following an arrest would mean the defendant's rights under the Iowa Constitution had been violated and the arresting officers and the entity that employed them would be subject to claims for damages.

7

certification of questions by this court or consideration of certified questions by the Iowa Supreme Court.

These observations do not necessarily mean that Baldwin's first proposed question should simply be disregarded, however. I conclude that this proposed question satisfies three of the four requirements for consideration of a certified question by the Iowa Supreme Court, because this is a "proper court" to certify this question, this question is "a question of Iowa law," and this question "appear[s] to the certifying court to have no controlling Iowa precedent." *Board of Water Works Trustees of City of Des Moines v. Sac Cnty. Bd. of Supervisors*, 890 N.W.2d 50, 56 (Iowa 2017) (stating the circumstances in which the Iowa Supreme Court has the discretion to answer certified questions). Indeed, it is a quite fascinating question. Whether this question may be "determinative of [Baldwin's case]," which is pending in this court, the third requirement under Iowa law, is less clear. *Id*.

Prior to the Iowa Supreme Court's answer to the original certified question and my September 14, 2018, Opinion And Order, Baldwin's first proposed question might well have been determinative of a claim in this case, where no Iowa constitutional claim had yet been decided. Indeed, like other questions I identified in my September 14, 2018, Opinion And Order, Baldwin's first proposed question could have been certified to the Iowa Supreme Court at the same time I certified the original question, but neither I nor any party considered certification of such a question. In other words, at that point in the litigation, nothing prevented Baldwin from asserting two separate and alternative claims for damages for violations of the Iowa Constitution based on two separate sections of article I.

Now, however, the case stands on a different footing. In his August 11, 2016, Motion For Partial Summary Judgment, as supplemented after the Iowa Supreme Court answered the original certified question, Baldwin argued that there were no genuine issues of material fact on the sole issue of whether he was arrested without probable cause under

8

Iowa law. *Baldwin*, 2018 WL 4567326, at *12. In my September 14, 2018, Opinion And Order, I then concluded, based on the parties' original and supplemental briefing, that Baldwin was entitled to summary judgment on his claim of a violation of article I, §§ 1 and 8 of the Iowa Constitution to the extent that he was arrested without probable cause under the Iowa constitutional standard. *Id*. at *17. This conclusion moots any question of whether article I, § 1 and article I, § 8 support separate and independent claims for damages for Iowa constitutional violations. This is so, because there is no indication from the Iowa Supreme Court—specifically, in the opinion answering the original certified question, the precedents on which that decision was based, or in *State v. Godfrey*, 898 N.W.2d 844 (Iowa 2017), which recognized an individual's cause of action for damages for a violation of the Iowa Constitution—that violations of separate sections of article I would allow for different damages or that violations of multiple sections of article I would allow for additional damages, at least where the violations are premised on *the same undisputed conduct* of the defendants, as is the situation, here.

Thus, while Baldwin's first proposed question is intriguing, it is not a proper question to certify in this case, because in this case, it is moot. Baldwin's request that I certify his first proposed question to the Iowa Supreme Court is **denied**.

### 2. *The question regarding who decides "all due care" immunity*

The second question that Baldwin proposes for certification to the Iowa Supreme Court is the following:

> Is *Baldwin* immunity a question for the jury or a question for the Court?

Baldwin argues that "all due care" qualified immunity (*i.e.*, *Baldwin* immunity) is an affirmative defense that must be pleaded and proved. He also contends that the Iowa Supreme Court held that the exercise of reasonable care is a question for the jury, not the court, citing *Thompson v. Kaczinski*, 774 N.W.2d 829, 835 (Iowa 2009). That being so, he contends that, at the very least, the question of who should decide "all due care"

9

immunity is a proper one for certification to the Iowa Supreme Court. Again, this is an intriguing question, but not one that I find can be certified in this case.

The Iowa Supreme Court has, indeed, stated, "Questions of negligence are ordinarily reserved for the jury," although it added that "only in extraordinary cases is summary judgment proper." *Clinkscales v. Nelson Sec., Inc.*, 697 N.W.2d 836, 846 (Iowa 2005).[3] The court then explained that, in the case before it, it could not say as a matter of law that the defendant was not negligent, as alleged in the plaintiff's petition, because a reasonable jury could find that the defendant was negligent, so the Iowa Supreme Court reversed the trial court's determination that the defendant was not negligent. *Id.* Thus, the Iowa Supreme Court acknowledged that there could be, but did not find in the case before it, circumstances in which negligence could be decided by the court. In a case cited in *Clinkscales*, *Phillips v. Covenant Clinic*, 625 N.W.2d 714 (Iowa 2001), the Iowa Supreme Court recognized that "claims of negligence are fact-based and not ordinarily susceptible to summary judgment," but found no genuine issues of material fact on the proximate cause element, so the Iowa Supreme Court concluded that summary judgment was warranted. 625 N.W.2d at 720. Thus, even if "negligence" or "reasonable care" is *ordinarily* a jury question, it can be properly decided by the court

---

[3] In the part of the decision in *Thompson* on which Baldwin relies, the Iowa Supreme Court stated, "The assessment of the foreseeability of risk is allocated by the Restatement (Third) [of Torts] to the fact finder, to be considered when the jury decides if the defendant failed to exercise reasonable care." *Thompson*, 774 N.W.2d at 835. It then quoted the *Restatement (Third) of Torts* as stating, "'The extent of foreseeable risk depends on the specific facts of the case and cannot be usefully assessed for a category of cases; small changes in the facts may make a dramatic change in how much risk is foreseeable. . . . [C]ourts should leave such determinations to juries unless no reasonable person could differ on the matter.'" *Id.* (quoting *Restatement (Third) of Torts* at 97-98). The court then adopted this clarification of the duty analysis. *Id.* These statements are not, singly or collectively, holdings that the exercise of reasonable care is a question exclusively for the jury, not the court, as Baldwin argues.

at summary judgment if no reasonable jury could find differently. *Id.*; *Phillips*, 625 N.W.2d at 720.

In my September 14, 2018, Opinion And Order, I observed that, in other contexts, the Iowa Supreme Court has concluded that other kinds of *qualified immunity* are questions of law for the court, including the immunity of a municipality from tort claims based on the "due care" of its employees, under IOWA CODE § 670.4(1)(c). *Baldwin*, 2018 WL 4567326, at *18 (citing cases). I also explained,

> There is no doubt in this case, however, where there is no genuine issue of material fact as to the "all due care" qualified immunity defense, that I could decide that question at summary judgment. *The Iowa Supreme Court may reach a different conclusion about who decides the question when presented with a case in which there are genuine issues of material fact on that question.* The Iowa Supreme Court may adhere to the view of the Eighth Circuit Court of Appeals as to federal qualified immunity that, "although a jury is to decide predicate facts, the ultimate question of qualified immunity is one for the court." *Thompson v. King*, 730 F.3d 742, 750 (8th Cir. 2013) (citing *Littrell v. Franklin*, 388 F.3d 578, 584-85 (8th Cir. 2004) ); *Luckert v. Dodge Cty.*, 684 F.3d 808, 817 (8th Cir. 2012) ("Qualified immunity is a legal question for the court, not the jury, to decide in the first instance, based either on the allegations or, if material facts are in dispute, on the facts found by the jury." (citing *Littrell*, 388 F.3d at 584-85); *Littrell*, 388 F.3d at 584-85 (explaining "[t]he law of our circuit is clear … [that] qualified immunity is a question of law for the court, rather than the jury, to decide"). On the other hand, in a case in which there are genuine issues of material fact on the defense, the Iowa Supreme Court could also decide that "all due care" qualified immunity is a question exclusively for the jury. *This is not such a case*.

> *Therefore, in the absence of genuine issues of material fact, I conclude that I can decide the question of "all due care" qualified immunity at summary judgment.*

*Baldwin*, 2018 WL 4567326, at *18 (emphasis added).

I now reiterate that *this is not a case* in which "all due care" qualified immunity is a question for the court or the jury, because *there are no genuine issues of material fact on that defense*; thus, I can decide the question of "all due care" qualified immunity at summary judgment. *Cf. Phillips*, 625 N.W.2d at 720 (negligence can be decided by the court at summary judgment if there are no genuine issues of material fact). This is entirely consistent with the Iowa Supreme Court's conclusion in *Clinkscales*, 697 N.W.2d at 846, that "Questions of negligence are ordinarily reserved for the jury," but that summary judgment is proper in the "extraordinary circumstances" where there are no genuine issues of material fact, and entirely consistent with *Phillips*, 625 N.W.2d at 720, in which the Iowa Supreme Court concluded that the question of negligence could be decided at summary judgment in the absence of any genuine issues of material fact. Again, "[t]he Iowa Supreme Court may reach a different conclusion about who decides the question [of 'all due care' qualified immunity] when presented with a case in which there are genuine issues of material fact on that question." *Baldwin*, 2018 WL 4567326, at *18. Because this is not such a case, it is not a proper case in which to certify the question.

Baldwin's request that I certify to the Iowa Supreme Court his second proposed question about who decides the "all due care" qualified immunity defense is **denied**.

### B. The City's Proposals

I will also consider, in turn, the City's two proposals concerning the questions to be certified to the Iowa Supreme Court.

### 1. *The question regarding application of the punitive damages standard*

The City's first proposal is that I not certify Proposed Question No. 4, which asks the following:

> 4. If punitive damages are available in answer to the previous question, would a reasonable jury be able to find that the applicable standard was met on the facts presented in this case?

The City argues that, because the parties do not know what the standard might be, the parties cannot determine whether all of the relevant facts are in the record that is available for review by the Supreme Court. Thus, the City argues, this question cannot be answered until the standard is identified and the relevant evidence is offered at trial, because only then will a court be able to determine whether a reasonable jury would be able to find that this new standard was (or was not) met.

There is some appeal to the City's argument, at least in the abstract, but it is not persuasive in the circumstances of this case. In my September 14, 2018, Opinion And Order, I explained that, in Baldwin's supplemental briefing after the Iowa Supreme Court answered the original certified question, Baldwin sought summary judgment that the defendants acted in reckless disregard of his rights under article I of the Iowa Constitution, as a gateway to a jury award of punitive damages. Baldwin argued that, generally, under IOWA CODE § 668A.1(1)(A) and applicable case law, reckless disregard of the rights of another is sufficient to award punitive damages and that the officers acted with reckless disregard in arresting him. The City did not argue that any genuine issues of material fact as to the officers' conduct prevented a determination that the officers' conduct met that standard for punitive damages. Rather, the City argued simply that IOWA CODE § 670.4(1)(e) bars punitive damages claims against municipalities and that there is no Iowa case that holds to the contrary. *Baldwin*, 2018 WL 4567326, at *25. Even so, neither Proposed Question No. 4, as framed, nor any answer to it by the Iowa

Supreme Court precludes the City from offering evidence at trial on the issue of whether the conduct of its officers meets the standard for an award of punitive damages, whatever the Iowa Supreme Court determines that standard is.

This is so, because I did not frame the question as, "If punitive damages are available in answer to Question No. 3, has the applicable standard been met as a matter of law on the facts presented in this case?" Rather, I framed it as, "If punitive damages are available in answer to the previous question, would a reasonable jury be able to find that the applicable standard was met on the facts presented in this case?" In other words, the only question that I would be asking the Iowa Supreme Court to decide is *whether Baldwin has generated a jury question* on punitive damages under the standard that the Iowa Supreme Court determines is applicable. Thus, if the Iowa Supreme Court answers the question, as I have framed it, in the negative, Baldwin will be precluded from seeking punitive damages against the City on his claim that the officers violated his Iowa constitutional rights. If the Iowa Supreme Court answers the question, as I have framed it, in the affirmative, then the question will be presented to the jury, and the City will have the opportunity to marshal whatever evidence it contends might be missing, so far, under the applicable standard.

Therefore, the City's request that I not certify Proposed Question No. 4 is **denied**.

### 2. *The question regarding retroactive availability of punitive damages or attorney's fees*

The City requests that I add the following question to those to be certified to the Iowa Supreme Court:

> If the answer to either Question No. 3 or Question No. 5 (or both) is in the affirmative, will retroactive application to the pending case be appropriate?

Like Baldwin, the City has not framed its argument for certification of this question in terms of the standards for certification of questions by this court or consideration of certified questions by the Iowa Supreme Court. Indeed, the City offered no argument or

14

explanation *at all* for certification of this question. Again, these omissions do not necessarily mean that the City's proposed question should simply be disregarded.

It is not difficult to perceive the basis for the City's proposed question. In *Vinson v. Linn-Mar Community School District*, 360 N.W.2d 108 (Iowa 1984), the Iowa Supreme Court considered whether the amendment to IOWA CODE § 613A.4, now IOWA CODE § 670.4, which added claims for punitive damages to the list of *exceptions* from municipal tort liability, was retroactive to cases filed prior to the effective date of that amendment. The court concluded that, because the amendment took away a right of recovery that previously existed and did not give a party a remedy where none or a different one existed previously, it was not applicable to the plaintiff's preexisting action. *Vinson*, 360 N.W.2d at 120-21. This case presents the opposite situation, where an answer to Question No. 3, concerning the availability of punitive damages on an individual's claim for damages for a violation of the Iowa Constitution would abrogate or make inapplicable the statutory exception from municipal tort liability for punitive damages under IOWA CODE § 670.4(e).

I conclude that this question satisfies three of the four requirements for consideration of certified questions by the Iowa Supreme Court, because this is a "proper court" to certify this question, this question is "a question of Iowa law," and this question "appear[s] to the certifying court to have no controlling Iowa precedent." *Board of Water Works Trustees*, 890 N.W.2d at 56 (stating the circumstances in which the Iowa Supreme Court has the discretion to answer certified questions). Somewhat more specifically, while there is Iowa precedent concerning retroactive application of new rules, there is plainly none concerning the retroactive application of a possible new rule that punitive damages are available against a municipality for a violation of an individual's rights under the Iowa Constitution, where an individual's cause of action for damages for such a violation was only recognized in *Godfrey*, 898 N.W.2d 844. This is a quite fascinating question. It is also a question that may be "determinative of [Baldwin's case]," which is

15

pending in this court, the remaining requirement, *see Board of Water Works Trustees*, 890 N.W.2d at 56, because it is directly applicable to the availability of any award of punitive damages (or attorney's fees) in this case.

I also conclude that the pertinent factors a federal court is to consider in deciding whether or not to certify questions to the state Supreme Court weigh in favor of certification of this question. *See Roth v. The Evangelical Lutheran Good Samaritan Soc'y*, 147 F. Supp. 3d 806, 814 (N.D. Iowa 2015); *Hagen v. Siouxland Obstetrics & Gynecology, P.C.*, 964 F. Supp. 2d 951, 961 (N.D. Iowa 2013); *Leiberkneckt v. Bridgestone/Firestone, Inc.*, 980 F. Supp. 300, 310 (N.D. Iowa 1997). This question has been left unsettled by the Iowa Supreme Court in the opinion answering the prior certified question, the precedents on which that decision was based, and in *Godfrey*, which recognized the cause of action. *Leiberkneckt*, 980 F. Supp. at 310 (relevant factors). This court may have the same legal resources available as the Iowa state courts, substantial familiarity with the pertinent Iowa law, so far as it has already been articulated, and no greater demand on its docket than the Iowa Supreme Court, *see id.*, but only the Iowa Supreme Court can provide an authoritative answer to this question. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 76 (1997) (explaining that certification of questions "increase[es] the assurance of gaining an authoritative response"). This question is not only one of first impression, but one that is likely to recur, now that the Iowa Supreme Court has recognized a private cause of action for damages for violation of Iowa constitutional rights. *Leiberkneckt*, 980 F. Supp. at 310.

The City's request that I certify one additional question is **granted**.

### III. CONCLUSION

Upon the foregoing, and incorporating in full by reference my September 14, 2018, Opinion And Order, I conclude that one more question should be added to those previously identified for certification to the Iowa Supreme Court.

THEREFORE,

1. The proceedings in this court, on *all* issues, in their entirety, are **stayed** pending answers to the questions certified to the Iowa Supreme Court, below.

2. I hereby certify the following questions to the Iowa Supreme Court:

> 1. Can the City assert qualified immunity to a claim for damages for violation of the Iowa Constitution based on its officers' exercise of "all due care"?
>
> 2. If the City can assert such a defense, on the facts presented in this case, does the City have "all due care" qualified immunity to liability for damages for the violation of Baldwin's right to be free from an unreasonable search and seizure under article I of the Iowa Constitution? This question necessarily includes questions about the extent to which reliance on a warrant may satisfy the "all due care" standard and whether the "all due care" analysis considers alternative bases for probable cause or a warrant on which the officers did not rely.
>
> 3. If punitive damages are an available remedy against an individual defendant for a violation of a plaintiff's rights under the Iowa Constitution, can punitive damages be awarded against a municipality that employed the individual defendant and, if so, under what standard?
>
> 4. If punitive damages are available in answer to the previous question, would a reasonable jury be able to find that the applicable standard was met on the facts presented in this case?
>
> 5. If an award of attorney's fees would have been available against an individual defendant for a plaintiff who attains some degree of success on a claim of a violation of a plaintiff's rights under the Iowa Constitution, would they be available against a municipality that employed the individual defendant and, if so, under what standard?

     6. If the answer to either Question No. 3 or Question No. 5 (or both) is in the affirmative, will retroactive application to the pending case be appropriate?

  3. The Clerk of Court shall forward this order to the Iowa Supreme Court under official seal, as required under Iowa Code § 684A.4, as well as the portions of the record designated by the parties, as set out in the next paragraph.

  4. Not later than **October 23, 2018,** the parties shall designate portions of the record for the Clerk of Court to forward to the Iowa Supreme Court under official seal.

  5. Pursuant to Rule 6.302(b)(4) of the Iowa Rules of Appellate Procedure, I designate the plaintiff as the party to file the first brief, because the plaintiff asserts the claim and seeks the relief at issue.

  6. The parties and their representatives are as follows: Plaintiff Gregory Baldwin is represented by Jack Bjorn Bjornstad of the Jack Bjornstad Law Office, 1017 Highway 71, PO Box 408, Okoboji, IA 51355; defendant Estherville, Iowa, is represented by Douglas L. Phillips of the Klass Law Firm L.L.P., Mayfair Center Upper Level, 4280 Sergeant Road Ste 290, Sioux City, IA 51106.

  7. The parties shall file status reports *promptly* upon receiving notice of the Iowa Supreme Court's decision to consider or to decline to consider the certified questions and, if the Iowa Supreme Court does consider such certified questions, upon notice of a decision by the Iowa Supreme Court.

  **IT IS SO ORDERED**.

  **DATED** this 2nd day of October, 2018.

*Mark W. Bennett*
_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA